## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 24-105** |
| **RYAN HARRIS, ET AL.** | **SECTION: D (1)**<br>**This Order applies to**<br>**all defendants except**<br>**for Ryan Harris and**<br>**Jovanna Gardner** |

### ORDER AND REASONS

Before the Court is a Motion to Sever Trial and Defendants on Behalf of Jason F. Giles ("Giles") and the King Law Firm, LLC (the "King Firm")[1] and a Motion to Sever Trial and Defendants on Behalf of Vanessa Motta and Motta Law, LLC (collectively, the "Motta Defendants").[2] Defendants, Diaminike F. Stalbert, Carl G. Morgan, and Timara N. Lawrence, have joined in and adopted the arguments made in the Motion to Sever filed by the Motta Defendants.[3] The Government opposes the Motions to Sever,[4] and both Giles and the King Firm and the Motta Defendants have filed a Reply.[5] On May 27, 2025, the Court held a hearing on the Motions to Sever and took the matter under advisement.[6] At the Court's request,[7] the Government and the Motta Defendants submitted supplemental briefing.[8]

---

[1] R. Doc. 216.
[2] R. Doc. 271.
[3] R. Docs. 289, 290, & 293.
[4] R. Doc. 302.
[5] R. Docs. 309 & 310.
[6] R. Doc. 311.
[7] R. Doc. 352.
[8] *See* R. Docs. 354 & 355.

After careful consideration of the parties' memoranda, the record, the evidence presented at the May 27, 2025 hearing, and the applicable law, the Motion to Sever filed by Giles and the King Firm is **GRANTED in part and DENIED in part** and the Motion to Sever filed by the Motta Defendants is **GRANTED in PART and DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves allegations of a years-long scheme by over a dozen individuals to stage fake automobile collisions in the New Orleans metropolitan area and file fraudulent insurance claims and fraudulent lawsuits based on the staged collisions.[9]  According to the Government, Cornelius Garrison, one of the "slammers" who was paid to stage collisions, began covertly cooperating with the federal government concerning the staged automobile collisions in October 2019.[10]   On September 18, 2020, a federal grand jury in the Eastern District of Louisiana charged nine individuals in a seven-count indictment related to the staged collisions in criminal matter *United States of America v. Cornelius Garrison, et al.*[11]  Four days later, on September 22, 2020, Garrison was murdered.[12]

In the instant matter, a federal grand jury in the Eastern District of Louisiana charged two individuals in a five-count indictment on May 3, 2024, which was originally filed under seal, related to the staged automobile collisions and Garrison's

---

[9] R. Doc. 256.  *See* R. Docs. 1 & 78.
[10] R. Doc. 1 at p. 2, ¶ 2; R. Doc. 78 at p. 3, ¶ 10; R. Doc. 256 at p. 3, ¶ 10 & p. 6, ¶ 21.
[11] *See* R. Doc. 1 in *United States v. Garrison, et al.*, Crim. A. No. 20-92-SSV-KWR (E.D. La.).
[12] R. Doc. 1 at p. 2, ¶ 4; R. Doc. 78 at p. 21, ¶ 4; R. Doc. 256 at pp. 20–21.

murder.[13]  The Government charged Ryan J. Harris and Jovanna R. Gardner with conspiracy to commit mail and wire fraud, as well as conspiracy to commit witness tampering through murder, witness tampering through murder, conspiracy to retaliate against a witness through murder, and retaliation against a witness through murder stemming from Garrison's alleged murder in September 2020.[14]  The Government filed a superseding bill of information for conspiracy to commit witness tampering as to Gardner on June 18, 2024,[15] and she entered a guilty plea that same day.[16]  Gardner is currently awaiting sentencing.

The Government filed a superseding indictment on December 6, 2024, charging Harris, Sean D. Alfortish, Vanessa Motta, Motta Law, LLC ("Motta Law"), Jason F. Giles, The King Firm, LLC (the "King Firm"), Leon M. Parker, Diaminike F. Stalbert, Carl G. Morgan, and Timara N. Lawrence with conspiracy to commit mail and wire fraud, charging various defendants with mail fraud, obstruction of justice, witness tampering, making false statements to federal agents, and charging Harris with witness tampering through murder, retaliation against a witness through murder, and causing Garrison's death through use of a firearm.[17]  On January 13, 2025, the Government filed a superseding bill of information as to Harris, charging him with conspiracy to commit mail and wire fraud, wire fraud, and causing death through the

---

[13] R. Doc. 1.  *See* R. Docs. 6, 7, 8, & 9.
[14] R. Doc. 1.
[15] R. Doc. 45.
[16] R. Doc. 46.
[17] R. Doc. 78.

use of a firearm. [18]  Harris entered a guilty plea as to all three counts of the superseding bill of information on January 16, 2025, and is awaiting sentencing.[19]

On April 25, 2025, the Government filed a thirteen-count second superseding indictment, charging Giles, the King Firm, the Motta Defendants, Alfortish, Parker, Stalbert, Morgan, and Lawrence with many of the same crimes set forth in the superseding indictment, but also charging Alfortish and Parker with crimes arising from Garrison's murder.[20]  In setting forth the manner and means of the conspiracy alleged in count one, the Government identifies the slammers used by Giles and the King Firm and the slammers used by Alfortish and the Motta Defendants.[21]  The Government alleges that from approximately 2011 to 2017, Damian Labeaud and Roderick Hickman staged numerous collisions for Giles and the King Firm, working as spotters and slammers, but also as runners who referred individuals involved in automobile accidents to Giles and the King Firm for money.[22]  The Government alleges that Giles and the King Firm knew that Labeaud and Hickman were staging automobile collisions,[23] and that Giles and the King Firm filed fraudulent lawsuits based on the staged collisions.[24]  The Government alleges that from approximately 2015 to 2017, Garrison and Slammer H also staged collisions for Giles and the King Firm.[25]  The Government similarly alleges that from approximately 2015 through

---

[18] R. Doc. 180.
[19] R. Doc. 182.
[20] R. Doc. 256 at pp. 2–16.
[21] *Id*. at pp. 7–16.
[22] *Id*. at pp. 3 & 7–10.
[23] *Id*. at p. 8, ¶ 9.
[24] *Id*. at pp. 9–10.
[25] *Id*. at p. 12, ¶ 21.

2022, Harris, Garrison, and others staged collisions for Alfortish and the Motta Defendants, as well as unnamed attorneys, who then filed fraudulent lawsuits and insurance claims based on the staged collisions.[26]  The Government claims that Attorney C and Attorney D pursued fraudulent lawsuits based on staged collisions and litigated fraudulent lawsuits with Giles, the King Firm, and the Motta Defendants.[27]  The Government also alleges that Garrison staged collisions for Giles, the King Firm, the Motta Defendants, and Alfortish.[28]

The Government further charges that in or around 2017, insurance defense attorneys representing companies targeted by the staged collision scheme began raising the defense of fraud in the lawsuits involving Giles and the King Firm, after which Giles and the King Firm committed various acts of obstruction of justice and witness tampering as part of a cover-up scheme to obstruct investigations into their conduct.[29]  The Government similarly alleges that in or around 2018, insurance defense attorneys began raising the defense of fraud in the lawsuits involving the Motta Defendants and Alfortish, and that they committed various acts of obstruction of justice and witness tampering as part of a cover-up scheme to obstruct investigations into their conduct.[30]

In addition to the conspiracy charge, Giles and the King Firm are charged with mail fraud in count two, obstruction of justice in count six, and witness tampering in

---

[26] *Id.* at pp. 12–15.
[27] *Id.* at pp. 5–6, ¶¶ 17 & 18.
[28] *Id.* at p. 6, ¶ 21.
[29] *Id.* at p. 11, ¶ 15.
[30] *Id.* at p. 15, ¶ 27.

count seven.[31]  Stalbert is charged with making false statements to federal agents in count eight.[32]  Alfortish, Motta, Motta Law, and Parker are charged with mail fraud in count three,[33] while Alfortish, Motta, and Motta law are charged with obstruction of justice in count four[34] and with witness tampering in count five.[35]  Alfortish and Parker, however, are also charged with conspiracy to commit witness tampering through murder in count nine, witness tampering through murder in count ten, conspiracy to retaliate against a witness through murder in count eleven, retaliation against a witness through murder in count twelve, and causing death through use of a firearm in count thirteen.[36]  The Government alleges that Garrison's indictment[37] contained information that Garrison provided over the course of his cooperation in the federal criminal investigation into the staged collision scheme,[38] and that Alfortish and Parker conspired to, and did, kill Garrison to prevent him from communicating information to a law enforcement officer or federal judge regarding the commission or possible commission of a federal offense.[39]  The following table contains a summary of the charges pending against each defendant in this matter:

---

[31] *Id*. at pp. 16–17 & 18–19.
[32] *Id*. at pp. 19–20.
[33] *Id*. at p. 17.
[34] *Id*. at pp. 17–18.
[35] *Id*. at p. 18.
[36] *Id*. at pp. 20–23.
[37] *See* R. Doc. 1 in *United States v. Garrison, et al.*, Crim. A. No. 20-92-SSV-KWR (E.D. La.).

| | Parker | Alfortish | Motta | Motta Law | Giles | King Firm | Stalbert | Morgan | Lawrence |
|---|---|---|---|---|---|---|---|---|---|
| Count 1: Conspiracy to commit mail & wire fraud | X | X | X | X | X | X | X | X | X |
| Count 2: Mail Fraud | | | | | X | X | | | |
| Count 3: Mail fraud | X | X | X | X | | | | | |
| Count 4: Obstruction of Justice | | X | X | X | | | | | |
| Count 5: Witness tampering | | X | X | X | | | | | |
| Count 6: Obstruction of Justice | | | | | X | X | | | |
| Count 7: Witness tampering | | | | | X | X | | | |
| Count 8: False Statements to federal agents | | | | | | | X | | |
| Count 9: Conspiracy to commit witness tampering through murder | X | X | | | | | | | |
| Count 10: Witness tampering through murder | X | X | | | | | | | |
| Count 11: Conspiracy to retaliate against a witness through murder | X | X | | | | | | | |
| Count 12: Retaliation against a witness through murder | X | X | | | | | | | |
| Count 13: Causing death through use of a firearm | X | X | | | | | | | |

In the instant Motion to Sever, Giles and the King Firm seek to sever their trial from all of their co-defendants pursuant to Rules 8(b) and 14(a) of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the United States Constitution, and for an expedited trial date before the current trial date of September 8, 2025.[40]  Focusing on count one of the superseding indictment,[41] Giles and the King Firm assert that joinder was improper under Rule 8(b) because count one alleges multiple, unrelated conspiracies.[42]  Even if joinder was proper under Rule 8(b), Giles and the King Firm assert that severance is warranted under Rule 14(a) because they will be unfairly prejudiced by a joint trial since they had no involvement in Garrison's murder.[43]

The Motta Defendants also filed a Motion to Sever, asking the Court to sever their trial from Giles and the King Firm pursuant to Rule 8(b), and to sever counts nine through thirteen of the second superseding indictment, regarding Garrison's murder, from the remaining counts pursuant to Rule 14(a).[44]  Like Giles and the King Firm, the Motta Defendants focus on count one of the second superseding indictment and argue that it alleges two separate, unrelated conspiracies – one involving Giles, the King Firm, Labeaud, and Hickman and the other involving the Motta Defendants, Alfortish, Garrison, and Harris.[45]  The Motta Defendants further assert that counts

---

[40] R. Doc. 216.
[41] The Court notes that Giles and the King Firm filed their Motion on March 12, 2025 (R. Doc. 216), before the Government filed the second superseding indictment on April 25, 2025, charging Alfortish and Parker with Garrison's murder (R. Doc. 256).
[42] R. Doc. 216-1 at pp. 1–6.
[43] *Id.* at pp. 7–13.
[44] R. Doc. 271.
[45] R. Doc. 271-1 at pp. 1–3.

nine through thirteen of the second superseding indictment (the "murder charges") should be severed under Rule 14 because Alfortish and Parker are charged with murdering Garrison to prevent him from testifying, while Motta is only accused in engaging in fraud and obstructing justice, and trying these crimes together will result in undue prejudice.[46]

The Court allowed defendants, Stalbert, Morgan, and Lawrence, to adopt and join in the Motion to Sever filed by the Motta Defendants.[47] While Stalbert and Lawrence seem to join the Motta Defendants' request to sever the conspiracy count from the murder charges,[48] Morgan adopted the arguments made by the Motta Defendants to support his request "to sever his trial on Count 1 of the second superseding indictment."[49]

The Government filed a single Opposition brief to the Motions to Sever, asserting that the second superseding indictment properly charges a single conspiracy involving Giles, the King Firm, Motta, Motta Law, Morgan, Stalbert, and Lawrence, and that the defendants have not demonstrated misjoinder under Rule 8 or that this is a rare case requiring severance under Rule 14.[50] Both the Motta Defendants and Giles and the King Firm filed Reply briefs in further support of their motions.[51] Additionally, the Government and the Motta Defendants filed supplemental briefing regarding whether a defendant's right to a speedy trial under

---

[46] *Id.* at pp. 3–4.
[47] R. Docs. 289, 290, & 293.
[48] *See* R. Docs. 287 & 291.
[49] R. Doc. 288.
[50] R. Doc. 302 at p. 1.
[51] *See* R. Docs. 309 & 310.

18 U.S.C. § 3161, *et seq.* or a defendant's right to effective assistance of counsel is the type of "specific trial right" the compromise of which would support severance under Rule 14(a).[52]

## II.    LEGAL STANDARD

### A. Joinder under Fed. R. Crim. P. 8

Rule 8(b) of the Federal Rules of Criminal Procedure provides that two or more defendants may be charged in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions."[53]  Rule 8(b) further specifies that, "[a]ll defendants need not be charged in each count."[54]  According to the Fifth Circuit, "[a]s the plain language of Rule 8(b) provides, there is no requirement 'that each defendant have participated in the same act or acts.'"[55]  "All that is required . . . is a series of acts unified by some substantial identity of facts or participants."[56]

In determining whether separate counts are part of the "same series of acts or transactions," courts look to the relatedness of the facts underlying each offense.[57] "When the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper."[58]  However, "[w]hen there is no substantial identity of facts or participants

---

[52] *See* R. Docs. 354 & 355.
[53] Fed. R. Crim. P. 8(b).
[54] *Id.*
[55] *United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012) (quoting *United States v. Krenning*, 93 F.3d 1257, 1266 (5th Cir. 1996)).
[56] *McRae*, 702 F.3d at 820 (quoting *Krenning*, 93 F.3d at 1266) (citation modified).
[57] *McRae*, 702 F.3d at 820 (quoting *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985)) (citation modified).
[58] *McRae*, 702 F.3d at 820 (quoting *Harrelson*, 754 F.2d at 1176–77) (citation modified).

between the two offenses, there is no 'series' of facts under Rule 8(b)."[59]  As recognized by the Fifth Circuit, "[t]he federal judicial system evinces a preference for joint trials of defendants who are indicted together because joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."[60]  Thus, in the Fifth Circuit, "[i]t is the rule . . . not the exception, that 'persons indicted together should be tried together, especially in conspiracy cases.'"[61]  Both the Supreme Court and the Fifth Circuit have noted that Rule 8(b) "requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice."[62]

### B. Severance under Fed. R. Crim. P. 14

If joinder is proper under Fed. R. Crim. P. 8(b), the Court must consider whether joinder might prejudice a party under Rule 14.  Rule 14(a) of the Federal Rules of Criminal Procedure allows a court to sever a trial if joinder appears to prejudice a defendant.[63]  The Supreme Court has held that, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be

---

[59] *McRae*, 702 F.3d at 820 (quoting *Harrelson*, 754 F.2d at 1177) (citation modified).

[60] *McRae*, 702 F.3d at 821 (quoting *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)) (citation modified).

[61] *McRae*, 702 F.3d at 821 (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)).

[62] *United States v. Lane*, 474 U.S. 438, 449 n.12, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986).  *See United States v. McLaurin*, 557 F.2d 1064, 1075 n.14 (5th Cir. 1977) ("A defendant who has been misjoined with others within the meaning of Rule 8(b) is entitled to severance as a matter of law, and the trial court's discretion never enters the picture.") (citing authority).  *See also United States v. Williams*, Crim. A. No. 20-55, 2021 WL 1063068, at *8 (E.D. La. Mar. 19, 2021) (Feldman, J.) (quoting *Lane*, 474 U.S. at 449 and n.12, 106 S.Ct. 725) ("Rule 8(b) . . . requires the granting of a motion for severance unless its standards are met . . . .") (citation modified).

[63] *United States v. Reed*, 908 F.3d 102, 114 (5th Cir. 2018).  *See* Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.").

granted, if any, to the district court's sound discretion."[64]    Additionally, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[65]    The defendant carries the "heavy burden" of showing "specific and compelling prejudice."[66]    According to the Supreme Court,

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.    For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.    See *Kotteakos v. United States,* 328 U.S. 750, 774–775, 66 S.Ct. 1239, 1252–1253, 90 L.Ed. 1557 (1946).    Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice.[67]

Thus, "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."[68]

The Fifth Circuit jurisprudence likewise "does not reflect a liberal attitude toward severance."[69]    "Because joinder of charges is the rule rather than the exception, in order to justify severance of counts a defendant must show clear, specific

---

[64] *Zafiro v. United States*, 506 U.S. 534, 538–39, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993).
[65] *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.
[66] *United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir. 1994).
[67] *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.
[68] *United States v. McRae*, 702 F.3d 806, 823 (5th Cir. 2012) (quoting *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933) (citation modified).
[69] *McRae*, 702 F.3d at 822 (citing authority).

and compelling prejudice that resulted in an unfair trial."[70]  The Fifth Circuit has

made clear that, "[a] defendant is not entitled to severance just because it would

increase his chance of acquittal or because evidence is introduced that is admissible

against certain defendants."[71]  The Fifth Circuit has also held that, "the mere

presence of a spillover effect does not ordinarily warrant severance."[72]  Instead,

"[s]everance is proper only if there is a serious risk that a joint trial would compromise

a specific trial right of one of the defendants, or prevent the jury from making a

reliable judgment about guilt or innocence."[73]

## III.   ANALYSIS

### A.  Joinder of Defendants Under Fed. R. Crim. P. 8(b)

#### 1.  *Joinder of Giles, the King Firm, and the Motta Defendants in count one of the second superseding indictment was proper under Rule 8(b).*

Giles, the King Firm, and the Motta Defendants, joined by Stalbert, Morgan

and Lawrence, argue in their respective motions that they were improperly joined as

co-defendants in count one of the second superseding indictment because they did not

participate in the same series of acts or transactions, as required for the joinder of

defendants under Fed. R. Crim. P. 8(b).[74]  Giles and the King Firm assert that joinder

is not proper because there is not one overarching conspiracy, but multiple alleged

---

[70] *United States v. Reed,* 908 F.3d 102, 116 (5th Cir. 2018) (quoting *United States v. Bullock*, 7 F.3d 171, 174 (5th Cir. 1995)) (citation modified).  *See United States v. Krenning*, 93 F.3d 1257, 1267 (5th Cir. 1996) (quoting *United States v. McCord*, 33 F.3d 1434, 1452 (5th Cir. 1994)).

[71] *Burton v. United States*, 237 F.3d 490, 495 (5th Cir. 2000) (citing *Zafiro*, 506 U.S. at 540, 113 S.Ct. 933).

[72] *Reed*, 908 F.3d at 116 (quoting *United States v. Simmons*, 374 F.3d 313, 318 (5th Cir. 2004)) (citation modified).

[73] *McRae*, 702 F.3d at 822.

[74] R. Doc. 216-1 at p. 6; R. Doc. 271-1 at p. 2.

conspiracies with some overlapping participants, and that they should be tried separately from their co-defendants.[75]

The Motta Defendants similarly assert that the second superseding indictment alleges two "similar, but completely separate parallel enterprises," one involving Giles, the King Firm, Labeaud, and Hickman and the other involving Alfortish, Motta, Garrison, and Harris.[76] The Motta Defendants assert that there are no allegations in the second superseding indictment that the two groups were associated in any way, or that they shared or discussed cases, agreed to stage collisions together, or had any contact whatsoever.[77] To get around this fact, however, the Motta Defendants claim that the Government lumped these parties together in Paragraph 26(d) of the second superseding indictment, alleging that Alfortish, Motta, Motta Law, Giles, the King Firm, Morgan, Attorney C, Garrison and others conspired to file and pursue a fraudulent lawsuit based upon a collision staged by Morgan and Garrison on or about April 12, 2017.[78] The Motta Defendants assert that the Government knows this is a misrepresentation of the facts that does not support joinder, and that the passengers initially brought their case to the King Firm, whom they subsequently fired before hiring Motta Law in July 2017.[79] The Motta Defendants claim that the Government indicted them with Giles and the King Firm for the strategic purpose of making the alleged conduct appear more widespread and

---

[75] R. Doc. 216-1 at p. 3.
[76] R. Doc. 271-1 at p. 2.
[77] *Id.*
[78] *Id.* at pp. 2–3 (*quoting* R. Doc. 256 at p. 14, ¶ 26(d)) (citation modified).
[79] R. Doc. 271-1 at p. 3.

to ensure a conviction on at least one count.[80]   The Motta Defendants maintain that these defendants are "two separate enterprises with no connection" and should be severed under Rule 8.

After setting forth a detailed, 30-page factual and procedural history of the alleged conspiracy between the various slammers, attorneys, and law firms charged in the second superseding indictment,[81] the Government asserts in its Opposition brief that count one charges one conspiracy based upon the three-factor test set forth by the Fifth Circuit in *United States v. Shah* to determine whether a single conspiracy existed.[82]   The Government contends that all three factors, which include the existence of a common goal,  the nature of the scheme, and the overlapping of the participants in the various dealings, are met in this case.[83]   Specifically, the Government contends that the defendants in this case pursued the common goal of personal gain through fraudulent lawsuits and insurance claims, and that the slammers, especially Garrison, were the "key men" who were involved in and directed illegal activities while the passengers and attorneys exerted individual efforts toward the common goal.[84]

During the hearing held on May 27, 2025, the Government argued that Garrison, Harris, and Slammer G (Irving Hatcher, deceased) were the key men in the conspiracy, as they directed the passengers to call the police after the staged

---

[80] *Id.* at p. 5.
[81] *See* R. Doc. 302 at pp. 2–31.
[82] *Id* at p. 32 (citing *Shah*, 95 F.4th 328, 361 (5th Cir. 2024)).
[83] R. Doc. 302 at p. 32 (citing *Shah*, 95 F.4th at 361).
[84] R. Doc. 302 at p. 32 (quoting *Shah*, 95 F.4th at 361) (citation modified).

collisions, to seek legal representation from certain law firms, and even reached out to passengers to remind them of medical appointments.  The Government claims in its Opposition brief that the slammers' actions were necessary and advantageous to the scheme's other aspects, but could also have disastrous consequences for others involved, as demonstrated by the November 2018 expert report describing red flags in some of the collisions staged by Garrison and Harris.[85]  The Government claims that every attorney named in the second superseding indictment was forced to address the report, sometimes in multiple cases, and that the attorneys, including Motta and attorneys at the King Firm, worked together to strategize about how to exclude the expert's testimony.[86]  According to the Government, the defendants were properly joined because they conspired with the same key-men and their actions were interdependent of each other.[87]

The Motta Defendants did not address the issue of proper joinder in their Reply brief.[88]  In contrast, Giles and the King Firm maintain that count one charges multiple alleged conspiracies, and that by the Government's own admission, the Giles/King Firm/Labeaud/Hickman conspiracy is separate from the Garrison/Harris/Alfortish/Motta conspiracy.[89]  Giles and the King Firm assert that the only evidence of a conspiracy between them and Garrison are certain 302

---

[85] R. Doc. 302 at pp. 35–36.  *See, Id.* at pp. 11–13 (*citing* R. Doc. 302-18 at p. 9).
[86] R. Doc. 302 at p. 36.  *See, Id.* at pp. 14–16 (*citing* R. Docs. 302-5, 302-6, 302-7, 302-8, 302-9, & 302-10).
[87] R. Doc. 302 at p. 36.
[88] *See* R. Doc. 309
[89] R. Doc. 310 at p. 1.

statements made by Garrison to law enforcement,[90] which the Government acknowledges are inadmissible as to Giles and the King Firm.[91] While the Government attempts to connect Giles and Garrison through Parker, Giles and the King Firm assert that Parker specifically told a King Firm associate working on his case that Garrison did not refer him to the King Firm and that his accident was not staged.[92] Giles and the King Firm also point out that Morgan initially hired the King Firm and fired them soon thereafter and hired Motta Law, but his initial intake form from the King Firm shows that he was referred by "Spider," whose real name is Ernest Castle.[93]

The Fifth Circuit broadly construes Rule 8 in favor of initial joinder.[94] The Fifth Circuit "has also recognized that the transaction requirement in Rule 8 is flexible, holding that such a transaction 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'"[95] In fact, "district courts are cautioned against 'rigid' or 'hypercritical' application of [Rule 8(b)] and instead instructed to apply it 'flexibly' and with 'commonsense.'"[96] According to the Fifth Circuit, "a 'series' of acts under

---

[90] The FD-302 is the form used by FBI agents to memorialize their notes taken during an interview with a witness. The "302 statements" referenced by Giles and the King Firm refer to statements made by Garrison during such FBI interviews.

[91] R. Doc. 310 at p. 2.

[92] *Id.* (*citing* R. Docs. 311-1 & 311-2).

[93] R. Doc. 310 at p. 3 (*citing* R. Doc. 311-3).

[94] *United States v. Butler*, 429 F.3d 140, 146 (5th Cir. 2005) (citing *United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990)).

[95] *Butler*, 429 F.3d at 146–47 (quoting *Fortenberry*, 914 F.2d at 675).

[96] *United States v. Burdett*, Crim. A. No. 20-39, 2021 WL 1063067, at *4 (E.D. La. Mar. 19, 2021) (Feldman, J.) (citing *Butler*, 429 F.3d at 146–47) ("This circuit has . . . recognized that the transaction requirement in Rule 8 is flexible, holding that such a transaction may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship[;] and applying the broader Rule 8(a) test to hold that the superseding indictment creates

Rule 8(b) . . . is something more than 'similar' acts [under rule 8(a)]."[97] As previously mentioned, Rule 8(b) does not require that each defendant have participated in the same act or acts; "[a]ll that is required is 'a series of acts unified by some substantial identity of facts or participants.'"[98] The Fifth Circuit has made clear that, "[t]he fact that an indictment does not charge each [defendant] with active participation in each phase of the conspiracy does not constitute misjoinder."[99]

It is well settled in this Circuit that, "[t]he propriety of joinder under Rule 8 is determined by the initial allegations of the indictment, which are accepted as true absent arguments of prosecutorial misconduct."[100] In count one of the second superseding indictment, the Government alleges that Labeaud and Hickman, both working as slammers and spotters, began staging automobile collisions for Giles in 2011, and continued to stage collisions for Giles and the King Firm when the firm was founded in 2015.[101] The Government also alleges that Labeaud and Hickman worked as runners, referring individuals involved in automobile collisions to Giles

---

an overlap that logically intertwines two sets of different charges") (citation modified); *United States v. Rittweger*, 524 F.3d 171, 177–78 (2d Cir. 2008) (Sotomayor, J.) (rejecting defendant's argument that as members of two distinct conspiracies the defendants should not have been joined in the same trial because Rule 8(b) "does not require such a rigid application" and should instead be applied with commonsense); *Daley v. United States*, 231 F.2d 123, 125 (1st Cir. 1956) (the joinder rules should not be read "narrowly" or "hypercritical[ly]")).

[97] *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir. 1975); *United States v. Gooch*, 665 F.3d 1318, 1325 (D.C. Cir. 2012) ("in the multiple defendant context, Rule 8(b) forbids joinder, even of identical crimes, unless those crimes are part of 'the same series of acts or transactions.'").

[98] *United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012) (quoting *United States v. Krenning*, 93 F.3d 1257, 1266 (5th Cir. 1996)) (citation modified).

[99] *United States v. Lindell*, 881 F.2d 1313, 1318 (5th Cir. 1989).

[100] *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985). *See United States v. Flowers*, 304 F.R.D. 501, 504 (E.D. La. 2015) (quoting *Harrelson*, 754 F.2d 1176) (same); *United States v. Jones*, 303 F.R.D. 279,283 (E.D. La. 2014) (citing *United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012); *United States v. Faulkner*, 17 F.3d 745, 758 (5th Cir. 1994)) (same). *See also McRae*, 702 F.3d at 820 (quoting *United States v. Posada–Rios*, 158 F.3d 832, 862 (5th Cir. 1998)) ("Whether joinder is proper is normally determined from the allegations in the indictment.").

[101] R. Doc. 256 at p. 7, ¶¶ 6–7.

and the King Firm for money.[102]  The Government alleges that Giles and the King Firm knew these collisions were staged, that Labeaud and Giles sometimes communicated through coded language, including fishing terms, to refer to staged collisions, and that Hickman and Labeaud were paid approximately $1,000 per passenger via cash and checks, which payments were concealed as "loans" or "advances" on future settlements.[103]  The Government alleges that on a date unknown, but no later than 2017, Labeaud met with another attorney, Danny Patrick Keating, told him about the staged collision scheme with Giles and the King Firm, that Keating agreed to pay Labeaud the same $1,000 fee for staged collisions, and that Labeaud and Hickman began staging collisions for Keating.[104]  The Government then alleges that from approximately 2011 to 2017, Labeaud and Hickman staged the following 11 automobile collisions for Giles and the King Firm:

1. On or about December 12, 2011, Labeaud and others staged a collision involving a tractor-trailer and a Mercedes-Benz C280.  Giles, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the collision.

2. On or about September 1, 2015, Labeaud staged a collision involving a tractor-trailer and an Infiniti FX35, and  Giles, the King Firm, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the collision.

3. On or about October 13, 2015, Labeaud, Hickman, and others staged a collision involving a tractor-trailer and a Chevrolet Tahoe.  Giles, the King Firm, Attorney D, Labeaud, Hickman, and others conspired to file and pursue a fraudulent lawsuit based on the collision.

4. On or about December 4, 2015, Labeaud and another individual staged a collision involving a tractor-trailer and a Chevrolet Camaro.  Giles, the

---

[102] *Id.* at pp. 7–8, ¶ 8.
[103] *Id.* at pp. 7–8, ¶¶ 6, 9, & 11.
[104] *Id.* at p. 8, ¶¶ 12–13.

King Firm, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

5. On or about June 8, 2016, Labeaud and others staged a collision involving a tractor-trailer and a Mazda MZ3. Giles, the King Firm, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

6. On or about March 27, 2017, Labeaud, Hickman, and others staged a collision involving a tractor-trailer and a Mercury Mountaineer. Giles, the King Firm, Keating, Labeaud, Hickman, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

7. On or about May 11, 2017, Labeaud and others staged a collision involving a tractor-trailer and a Ford Expedition, and Giles, the King Firm, Keating, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

8. On or about May 24, 2017, Stalbert, Labeaud, and others staged a collision involving a tractor-trailer and a Toyota Corolla, and Stalbert, Attorney E, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

9. On or about June 6, 2017, Labeaud and others staged a collision involving a tractor-trailer and a Chevrolet Avalanche, and Keating, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

10. On or about June 12, 2017, Labeaud and others staged a collision involving a tractor-trailer and a Chevrolet Trailblazer, and Keating, Labeaud, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

11. On or about June 28, 2017, Labeaud, Hickman, and others staged a collision involving a tractor-trailer and a Chevrolet Impala. Giles, the King Firm, Keating, Attorney C, Labeaud, Hickman, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.[105]

The Government alleges that when insurance defense attorneys representing companies targeted by the staged collision scheme began raising the defense of fraud

---

[105] *Id*. at pp. 9–10, ¶ 14.

in 2017, Giles and the King Firm committed various acts of obstruction of justice and witness tampering to cover up their scheme, including secretly recording manipulated statements from Hickman and Labeaud that the collisions were legitimate.[106]

As to the Motta Defendants, the Government alleges that beginning at an unknown time, Garrison and Harris (both slammers) began staging collisions for and directing passengers to Alfortish, Motta, and Motta Law for representation in fraudulent lawsuits.[107] The Government alleges that Alfortish, Motta, and Motta Law knew that Harris and Garrison were staging collisions, and that they were paying Harris and Garrison via cash and checks for bringing them staged collisions.[108] According to the Government, Alfortish, Motta, and Motta Law categorized the payments as "loans" or "advances" on future settlements, as well as "professional fees" to conceal their true nature.[109] The Government alleges that these payments were funneled through entities controlled by Alfortish, and that Alfortish, Motta, and Motta Law instructed Garrison to lie and say that the payments were for other reasons, including as compensation for construction, if he was ever questioned about them.[110] The Government then alleges that from approximately 2015 through 2022, Harris, Garrison, and others staged the following 11 automobile collisions for

---

[106] *Id*. at pp. 11–12, ¶¶ 15–20.
[107] *Id*. at pp. 12–13, ¶¶ 22–24. The Government also alleges that Garrison directed passengers in his staged collisions to Attorney C, Attorney D, Attorney E, and Attorney F for representation in fraudulent lawsuits. *Id*. at p. 12, ¶ 22.
[108] *Id*. at p. 13, ¶ 25.
[109] *Id*.
[110] *Id*.

Alfortish, Motta, Motta Law, and other attorneys referenced in the indictment:

1. On or about October 15, 2015, Garrison and others staged a collision involving a Hotard bus and a Dodge Avenger.  Alfortish, Motta, Motta Law, Attorney D, and others conspired to file and pursue a fraudulent lawsuit based on the collision.

2. On or about January 17, 2016, Parker, Garrison, and others staged a collision involving a tractor-trailer and a Dodge Charger.  **Giles, the King Firm,** Parker, Attorney C, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

3. On or about January 10, 2017, Harris, Parker, and others staged a collision involving a Dodge Challenger and an Audi A4.  Harris, Parker, and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

4. On or about April 12, 2017, Morgan, Garrison, and others staged a collision involving a tractor-trailer and a Lincoln Town Car. Alfortish, Motta, Motta Law, **Giles, the King Firm**, Morgan, Attorney C, Garrison, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

5. On or about April 24, 2017, Harris, Garrison, and others staged a collision involving a tractor-trailer and a Nissan Sentra.  Alfortish, Motta, Motta Law, Harris, Attorney C, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

6. On or about September 6, 2017, Stalbert, Garrison, and others staged a collision involving a tractor-trailer and a Chevrolet Impala.  Alfortish, Motta, Motta Law, Harris, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

7. On or about November 13, 2017, Harris and others staged a collision involving a tractor-trailer and a Chevrolet Impala.  Alfortish, Motta, Motta Law, Harris, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

8. On or about August 27, 2020, Harris, Lawrence, and others staged a collision involving a Buick Envision and a Ford Taurus, and Lawrence provided Harris with stolen personal identifying information.  Harris, Lawrence, and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

9. On or about September 21, 2021, Harris and others staged a collision involving a Mercedes-Benz GLB 250 and a Toyota Corolla. Harris and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

10. On or about December 22, 2021, Harris, Parker, and others staged a collision involving a Genesis G80 and a Toyota Corolla. Alfortish, Motta, Motta Law, Parker, Harris, and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

11. On or about May 1, 2022, Harris and others staged a collision involving an Infiniti Q60 and a BMW X1. Harris and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.[111]

The Government further alleges that Alfortish, Motta, and Motta Law became aware of the federal criminal investigation into the staged collision scheme in 2019, and attempted to distance themselves from it by committing various acts of obstruction of justice and witness tampering.[112] According to the Government, Alfortish, Motta, and Motta Law conspired to manipulate Individual 1 into making false statements about the staged collision scheme and conspired to pay Garrison to move outside of the United States if he agreed not to cooperate with the federal criminal investigation.[113] The Government alleges that Alfortish, Motta, and Motta Law also conspired to obstruct Garrison's participation in a deposition in or around January 2020, and conspired to obstruct Harris' participation in a deposition in or around November 2020.[114]

The Government argues in its Opposition brief that the defendants in this case were properly charged in a single conspiracy under the three-part test set forth by

---

[111] *Id*. at pp. 13–15, ¶ 26 (emphasis added).
[112] *Id*. at p. 15, ¶ 27.
[113] *Id*. at p. 16, ¶¶ 28–29.
[114] *Id*. at p. 16, ¶¶ 30–31.

the Fifth Circuit in *United States v. Shah*.[115]  In *Shah,* the Fifth Circuit held that in determining whether there is a single conspiracy, courts look to: "(1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings."[116]  The Fifth Circuit further held in *Shah* that, "[t]his court will affirm a jury's finding that the government proved a single conspiracy unless the evidence and all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt."[117]  The Fifth Circuit has made clear that, "[t]he question of whether *the evidence* establishes the existence of a single conspiracy or multiple conspiracies is a question of fact for the jury."[118]

Unlike in *Shah,* the issue before this Court–the propriety of joinder under Rule 8–is a question of law.[119]  While the *Shah* case was in a different procedural posture from this one, the Court nonetheless finds *Shah* instructive in determining whether the allegations in count one of the second superseding indictment charge the defendants with one conspiracy or with multiple conspiracies and, consequently, whether joinder of Giles and the King Firm with the Motta Defendants was proper.

---

[115] R. Doc. 302 at pp. 32–36 (citing *Shah*, 95 F.4th 328, 361 (5th Cir. 2024)).

[116] *Shah*, 95 F.4th at 361 (quoting *United States v. Beacham*, 774 F.3d 267, 273 (5th Cir. 2014) (citation modified).

[117] *Shah,* 95 F.4th at 361 (quoting *Beacham*, 774 F.3d at 273) (citation modified).

[118] *United States v. Shows Urquidi*, 71 F.4th 357, 381 (5th Cir. 2023) (quoting *Beacham*, 774 F.3d at 273) (citation modified) (emphasis added).  *See United States v. Donofrio*, Case No. 23-40586 c/w 24-40002, 2025 WL 1443577, at *5 (5th Cir. May 20, 2025) (per curiam) (citing *United States v. Warren*, 986 F.3d 557, 562–63 (5th Cir. 2021)).

[119] *United States v. Williams*, Crim. A. No. 20-55, 2021 WL 1063068, at *8 (E.D. La. Mar. 19, 2021).

Notably, Giles and the King Firm did not address the three *Shah* factors in either their Motion or their Reply brief.[120]  The same is true of the Motta Defendants.[121]

As to the first factor, the Fifth Circuit in *Shah* explained that it interprets "the existence of a common goal" broadly, and that a common pursuit of personal gain is sufficient.[122]  The Court agrees with the Government that the first factor supports a single conspiracy, as it is clear from the allegations in count one that the goal of the alleged conspiracy was a common pursuit of personal gain through staging collisions and filing fraudulent lawsuits or insurance claims.  As to the second factor–the nature of the scheme–the *Shah* court reasoned that, "if the 'activities of one aspect of the scheme are necessary or advantageous to the success of another aspect' then that supports a finding of a single conspiracy."[123]  The Court finds that the second factor also supports a single conspiracy, as the activities of the slammers were necessary for the success of the subsequent fraudulent lawsuits or fraudulent insurance claims and likely impacted the amount of any settlements received as a result of those lawsuits. This is supported by the Government's allegations that most of the slammers were paid by attorneys and law firms to stage the collisions, which demonstrates their importance to the overall scheme.  Likewise, the attorneys' actions in filing fraudulent lawsuits were necessary and advantageous to the success of the overall scheme because without the lawsuits and subsequent settlements, the scheme would not have been profitable.

---

[120] *See* R. Docs. 216 & 310.
[121] *See* R. Docs. 271 & 309.
[122] *Shah*, 95 F.4th at 361 (citing *Beacham*, 774 F.3d at 273).
[123] *Shah*, 95 F.4th at 361 (quoting *Beacham*, 774 F.3d at 274).

Regarding the third factor, or the overlapping of participants, the *Shah* court explained that, "[a] single conspiracy exists where a 'key man' is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal."[124]  The Court finds that the allegations in count one of the second superseding indictment show that there are at least four individuals who conspired with both the Motta Defendants and with Giles and the King Firm to stage collisions and bring fraudulent lawsuits based on those collisions—Garrison, Attorney C, Attorney D, and Parker.  By way of example, the Government alleges that Garrison staged collisions for both Giles and the King Firm and for the Motta Defendants between 2015 and 2017.[125]  While Garrison primarily staged collisions for Alfortish, Motta, and Motta Law during that time,[126] the Government identifies one collision staged by Garrison in January 2016, for which Giles and the King Firm pursued a fraudulent lawsuit.[127]  The Government also alleges that Garrison and others staged a collision on April 12, 2017, for which Alfortish, Motta, Motta Law, Giles, the King Firm, and others conspired to file a fraudulent lawsuit.[128]  The Court recognizes that the Motta Defendants have alleged, and the Government does not dispute, that the passengers in that collision initially brought their case to the King Firm and later fired the King Firm and hired the Motta Defendants "who filed a fraudulent lawsuit based on the staged collision."[129]  The

---

[124] *Shah*, 95 F.4th at 361 (quoting *United States v. Richerson*, 833 F.2d 1147, 1154 (5th Cir. 1987)) (citation modified).
[125] R. Doc. 256 at p. 6, ¶ 21, p. 12, ¶ 21, & pp. 13–14, ¶¶ 26(a), (b), (d), (e), & (f).
[126] *Id*. at pp. 12–16.
[127] *Id*. at pp. 13–14, ¶ 26(b).
[128] *Id*. at p. 14, ¶ 26(d).
[129] R. Doc. 302 at p. 17; *See* R. Doc. 271-1 at p. 3.

Court, however, finds that evidence regarding the underlying collision further supports overlapping participants between Giles and the King Firm and the Motta Defendants.

Count one of the second superseding indictment also includes allegations that Attorneys C and D participated in fraudulent lawsuits with both the Motta Defendants and with Giles and the King Firm between 2015 and 2017.[130] The Government charges that Attorneys C and D pursued fraudulent lawsuits with Giles and the King Firm based upon three staged collisions that occurred on October 13, 2015, January 17, 2016, and June 28, 2017,[131] and that they pursued fraudulent lawsuits with Alfortish, Motta, and Motta Law based upon three staged collisions that occurred on October 15, 2015, April 12, 2017, and April 24, 2017.[132] Thus, Attorneys C and D allegedly assisted Giles, the King Firm, and the Motta Defendants in bringing fraudulent lawsuits based upon 6 of the 22 staged collisions identified in the second superseding indictment.[133] More specifically, the Government alleges that Attorney C filed two fraudulent lawsuits with Giles and the King Firm,[134] and filed two fraudulent lawsuits with Alfortish, Motta, and Motta Law.[135] The Government also alleges that Attorney D filed one fraudulent lawsuit with Giles and the King

---

[130] R. Doc. 256 at pp. 5–6, ¶¶ 17–18.

[131] *Id*. at pp. 9–10, ¶¶ 14(c) & (k), & pp. 13–14, ¶ 26(b). The Court notes that Attorney E allegedly conspired with Stalbert to file and pursue a fraudulent lawsuit based on a May 24, 2017 collision staged by Stalbert and Labeaud, but the Government does not allege that Giles or the King Firm were involved in that lawsuit. *Id*. at p. 10, ¶ 14(h).

[132] *Id*. at pp. 12 & 13–14, ¶¶ 22 & 26(a), (d), & (e). The Court notes that Attorney E allegedly conspired with Stalbert, Garrison, and others to file a fraudulent lawsuit based on a September 6, 2017 collision that was staged by Stalbert, Garrison, and others. *Id*. at p. 14, ¶ 26(f).

[133] *See Id*. at pp. 9–10 & 13–15.

[134] *Id*. at p. 10, ¶ 14(k) & pp. 13–14, ¶ 26(b).

[135] *Id*. at p. 14, ¶¶ 26(d) & (e).

Firm,[136] and filed one fraudulent lawsuit with Alfortish, Motta, and Motta Law.[137] The Court finds this overlap noteworthy, especially considering that the two fraudulent lawsuits brought by Attorney D were based upon staged collisions that occurred only two days apart.[138]

Finally, the Court further points out that Parker is charged with working with both Giles and the King Firm and with the Motta Defendants to stage collisions and pursue fraudulent lawsuits and insurance claims. The Government alleges in count one that Parker staged a collision for Giles and the King Firm in January 2016 and conspired with them to file and pursue a fraudulent lawsuit based on that collision.[139] The Government also alleges that Parker staged a collision for Alfortish, Motta, and Motta Law in December 2021 and conspired with them to file and pursue a fraudulent insurance claim based on that collision.[140]

In light of the allegations as to Garrison, Attorneys C and D, and Parker in count one of the second superseding indictment, the Court finds that there is an overlap of participants in the alleged schemes of Giles, the King Firm, and the Motta Defendants. To the extent that the Motta Defendants contend that the Government has "misrepresented facts to create a false basis to join unrelated parties,"[141] the Court believes such fact-finding is appropriately left to the jury. The Court finds that

---

[136] *Id*. at p. 9, ¶ 14(c).
[137] *Id*. at p. 13, ¶ 26(a).
[138] *Id*. at p. 9, ¶ 14(c) & p. 13, ¶ 26(a).
[139] *Id*.  at p. 13, ¶ 26(b).
[140] *Id*. at p. 15, ¶ 26(j). The Court notes that the Government also alleges that Parker staged a third collision in April 2017, but that Harris, Parker, and others conspired to file and pursue a fraudulent insurance claim based on that collision. *Id*. at p. 14, ¶ 26(c).
[141] R. Doc. 271-1 at p. 3.

the three-prong test set forth in *Shah* is satisfied and that count one of the second superseding indictment alleges a single conspiracy involving Giles, the King Firm, and the Motta Defendants, among others.  In reaching this conclusion, the Court is mindful that, "[w]hile the conspiracy may have a small group of core conspirators, other parties who knowingly participate with these core conspirators and others to achieve a common goal may be members of an overall conspiracy."[142]

Taking a commonsense, flexible approach to Rule 8(b)'s requirements[143] and construing them broadly in favor of initial joinder,[144] the Court finds that there is a logical relationship between the alleged actions of the Motta Defendants and those of Giles and the King Firm in count one of the second superseding indictment.  Stated another way, the Court finds that count one alleges that Giles, the King Firm, and the Motta Defendants participated in the same series of acts or transactions constituting a conspiracy to commit mail and wire fraud stemming from the staged collisions, as there is a substantial identity of facts and participants common to these defendants.  Giles, the King Firm, and the Motta Defendants allegedly utilized the same scheme to commit fraud, which involved overlapping participants.  Giles, the

---

[142] *United States v. Perez*, 489 F.2d 51, 62 (5th Cir. 1973).

[143] *United States v. Williams*, Crim. A. No. 20-55, 2021 WL 1063068, at *1 (E.D. La. Mar. 19, 2021). *See United States v. Butler*, 429 F.3d 140, 146–47 (5th Cir. 2005) (quoting *United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990)) ("This Circuit has also recognized that the transaction requirement in Rule 8 is flexible, holding that such a transaction 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'"); *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Shellef*, 507 F.3d 82, 96 (2d Cir. 2007)) (citation modified) ("In this context, we also apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder.").

[144] *Butler*, 429 F.3d at 146 (citing *Fortenberry*, 914 F.2d at 675).

King Firm, and the Motta Defendants are alleged to have paid slammers to stage automobile collisions and to refer the passengers in such collisions to their respective law firm for representation so that they could file fraudulent lawsuits based on the collisions.[145]  Additionally, Giles, the King Firm, and the Motta Defendants allegedly paid their slammers via cash and checks and attempted to conceal the nature of the payments in the same way – by categorizing them as "loans" or "advances" on future settlements.[146]  The Court therefore concludes that count one of the second superseding indictment alleges that Giles, the King Firm, and the Motta Defendants participated in the same series of acts or transactions, such that their joinder in count one is proper under Rule 8(b).

### 2. Joinder of Stalbert, Morgan, and Lawrence in count one was proper under Rule 8(b).

To the extent that defendants, Stalbert, Morgan, and Lawrence, have joined in and adopted the Motta Defendants' arguments regarding improper joinder of defendants in count one of the second superseding indictment, the Court likewise finds that they were properly joined as defendants in count one under Fed. R. Crim. P. 8(b).  The Government alleges in count one that Stalbert was involved in at least two staged collisions and recruited others to participate in staged collisions,[147] that

---

[145] R. Doc. 256 at pp. 7–8 & 13, ¶¶ 8, 11, & 25.  The Court notes that while count one includes allegations that Garrison staged collisions for both the Motta Defendants and for Giles and the King Firm from approximately 2015 to 2017 (*Id*. at pp. 12 & 13–14, ¶¶ 21–22 & 24–26(f)), there is no allegation that Giles or the King Firm paid Garrison for these collisions.  The Court also notes that while the Government has alleged that Garrison and Parker staged a collision in January 2016 and that Giles and the King Firm and others conspired to file a fraudulent lawsuit based on that collision (*Id*. at pp. 13–14, ¶ 26(b)), there is no allegation that Garrison was paid to stage that collision.

[146] *Id*. at pp. 8 & 13, ¶¶ 11 & 25.

[147] *Id*. at p. 5, ¶ 13.

Morgan was involved in at least one staged collision,[148] and that Lawrence provided stolen personal identifying information to defendant, Harris, as part of the staged collision scheme.[149] As to Stalbert, the Government alleges that he, Labeaud, and others staged a collision on or about May 24, 2017, and that Stalbert, Labeaud, Attorney E, and others conspired to file and pursue a fraudulent lawsuit based on the collision.[150] The Government also alleges that Stalbert, Garrison, and others staged a collision on or about September 6, 2017, and that Stalbert, Garrison, Attorney E, and others conspired to file and pursue a fraudulent lawsuit based on that collision.[151] Accordingly, count one alleges that Stalbert participated in the same series of acts or transactions constituting an offense with Giles, the King Firm, and the Motta Defendants, as required for joinder of defendants under Rule 8(b).

Turning to Morgan, the Government alleges in count one that Morgan, Garrison, and others staged a collision on or about April 12, 2017, and that Morgan, Alfortish, Motta, Motta Law, Giles, the King Firm, Attorney C, Garrison, and others conspired to file and pursue a fraudulent lawsuit based on that collision.[152] As previously mentioned, the parties agree that the passengers of this collision initially hired Giles and the King Firm to represent them, but subsequently fired them and hired the Motta Defendants, who filed a fraudulent lawsuit based on the collision.[153] Nonetheless, because Morgan allegedly worked with both the Motta Defendants and

---

[148] *Id*. at ¶ 14.
[149] *Id*. at ¶ 15.
[150] *Id*. at p. 10, ¶ 14(h).
[151] *Id*. at p. 14, ¶ 26(f).
[152] *Id*. at ¶ 26(d).
[153] R. Doc. 302 at p. 17; R. Doc. 271-1 at pp. 2–3.

with Giles and the King Firm to stage a collision and pursue a fraudulent lawsuit, count one alleges that Morgan participated in the same series of acts or transactions constituting an offense with Giles, the King Firm, and the Motta Defendants, as required for joinder of defendants under Rule 8(b).

Lastly, the Government alleges in count one that Lawrence conspired with Harris and others to stage a collision on or about August 27, 2020 and, as part of the staged collision scheme, she provided Harris, with stolen personal identifying information and then conspired with Harris and others to file and pursue a fraudulent insurance claim based on the staged collision.[154]   Notably, count one includes allegations that Parker, Harris, and others staged at least four other collisions in 2017, 2021, and 2022, and that they conspired with Alfortish, Motta, Motta Law, and others to file and pursue fraudulent insurance claims based on the staged collisions.[155]  The Court finds that there is a substantial overlap in facts and participants regarding the filing of fraudulent insurance claims as alleged in count one.  As such, the Court concludes that count one alleges that Lawrence and other defendants participated in the same series of acts or transactions constituting an offense, and that she was properly joined as a defendant in count one under Rule 8(b).

### B. Joinder of offenses under Fed. R. Crim. P. 8(b)

Giles and the King Firm further assert that the allegations against them and the allegations against their co-defendants are not based on the same act or

---

[154] R. Doc. 256 at p. 15, ¶ 26(h).
[155] *Id*. at pp. 14 & 15, ¶¶ 26(c), (i), (j), & (k).

transaction, and that severance is required under Fed. R. Crim. P. 8(b).[156]  Giles and the King Firm argue that their alleged actions are not part of any common scheme or plan with the other co-defendants, especially the counts alleging obstruction of justice and witness tampering by Alfortish and the Motta Defendants, the count alleging false statements to federal agents by Stalbert, and the counts "regarding the alleged murder by Harris and others."[157]  Giles and the King Firm also claim that the facts underlying the four counts they are charged with—conspiracy to commit mail and wire fraud in count one, mail fraud in count two, obstruction of justice in count five, and witness tampering in count six – are sufficiently dissimilar from the facts underlying the remining counts charged against their co-defendants to warrant severance under Rule 8(b).[158]  Giles and the King Firm argue that their inclusion in count one is not sufficient to support the joinder of offenses under Rule 8(b).[159]

The Motta Defendants do not assert in their Motion that offenses were improperly joined under Rule 8(b).[160]

The Government argues that the charges against the defendants were properly joined under Rule 8(b) because the defendants are charged with committing the same series of acts or transactions constituting offenses that are of a similar character and

---

[156] R. Doc. 216-1 at p. 6.

[157] *Id.*

[158] *Id*.  The Court again notes that Giles and the King Firm filed their Motion on March 12, 2025, before the Government filed the second superseding indictment on April 25, 2025.  As a result, their Motion references the superseding indictment filed on December 6, 2024.  R. Doc. 78.  Giles and the King Firm are charged with the same offenses in the second superseding indictment, but they appear in counts one, two, six, and seven.  R. Doc. 256 at pp. 16–19.

[159] R. Doc. 216-1 at p. 6.

[160] *See, generally*, R. Doc. 271-1.

part of a common scheme or plan.[161]  The Government points out that the second superseding indictment charges Giles, the King Firm, and the Motta Defendants with conspiring with many of the same individuals, including Garrison, as part of a scheme to defraud insurance and trucking companies through fraudulent lawsuits and insurance claims.[162]  The Government also points out that Stalbert staged collisions with Labeaud and Garrison and made false statements to the FBI regarding her participation in those collisions, Morgan staged a collision with Garrison, and Lawrence provided stolen personal information to Harris for the purpose of staging a collision and filing a false insurance claim.[163]  The Government contends that the charged offenses were either committed by the same conspirators, occurred close in time to each other, or were otherwise logically related such that joinder of both offenses and defendants was proper.[164]  As such, the Government argues that Giles, the King Firm, and the Motta Defendants have failed to demonstrate misjoinder under Rule 8 and that their motions should be denied.

As previously discussed, two or more defendants can be charged in a single indictment under Rule 8(b) "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."[165]  The Fifth Circuit has held that, "[w]hether the counts of an indictment fulfill the 'same series requirement is determined by examining the relatedness of the

---

[161] R. Doc. 302 at p. 37.
[162] *Id.* at p. 37 (*citing* R. Doc. 256).
[163] R. Doc. 302 at pp. 37–38.
[164] *Id.* at p. 38 (citing *United States v. Butler*, 429 F.3d 140, 146–47 (5th Cir. 2005); *United States v. Huffine*, Crim. A. No. 02-93, 2002 WL 1423291, at *2 (E.D. La. June 26, 2002)).
[165] Fed. R. Crim P. 8(b).

facts underlying each offense."[166]  Further, "[w]hen the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper."[167]  "When there is no substantial identity of facts or participants between the two offenses, there is no 'series' of facts under Rule 8(b)."[168]

As the Court has recounted several times, count one of the second superseding indictment charges all of the defendants with a conspiracy to commit mail and wire fraud based upon an alleged scheme of staging automobile collisions and filing fraudulent lawsuits and insurance claims based upon those collisions.  The scheme allegedly began in December 2011 and continued through December 2024.[169]  While the remaining twelve counts are based upon actions taken by various defendants in 2020 and 2022, the conspiracy scheme is alleged to have been the catalyst for the events that followed, which are charged in the other counts.  Thus, the allegations regarding the conspiracy in count one connect Giles and the King Firm to the allegations against the other defendants in counts three, four, five, eight, nine, ten, eleven, twelve, and thirteen of the second superseding indictment.

For example, Giles and the King Firm are charged with the conspiracy in count one, with mail fraud in count two based upon the mailing of a settlement check for $50,000, with obstruction of justice in count six for trying to impede the grand jury's

---

[166] *United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012) (quoting *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985)) (citation modified).
[167] *McRae*, 702 F.3d at 820 (quoting *Harrelson*, 754 F.2d at 1176–77) (citation modified).
[168] *McRae*, 702 F.3d at 820 (quoting *Harrelson*, 754 F.2d at 1177) (citation modified).
[169] R. Doc. 256 at pp. 3–16.

investigation into the staged collision scheme by secretly recording Hickman and manipulating him into falsely stating that the collisions he and Labeaud staged were legitimate, and with witness tampering in count seven for engaging in misleading conduct toward Hickman with the intent to influence, delay, and prevent his testimony in the grand jury's investigation into the staged collision scheme. [170] Parker, Alfortish, and the Motta Defendants are charged with mail fraud in count three for mailing a "special and limited power of attorney" related to the staged collision scheme, and Alfortish and the Motta Defendants are charged with obstruction of justice in count four for offering Garrison payment and to move him outside of the United States if he agreed not to cooperate with the federal criminal investigation into the staged collision scheme and with witness tampering in count five for persuading and attempting to persuade Garrison with the intent to influence, delay, and prevent Garrison's testimony in the grand jury's investigation into the staged collision scheme. [171] There is a substantial overlap in facts underlying the counts against Giles and the King Firm and these counts against Parker, Alfortish, and the Motta Defendants, which stem from the alleged conspiracy, and the Government will likely introduce some of the same evidence regarding Garrison's cooperation with the federal government's investigation into the staged collisions in support of these counts. The same is true for count eight, which charges Stalbert with making false statements to FBI agents by stating that she had never taken part in a staged collision, that she did not recognize anyone in a video of a staged collision

---

[170] *Id.* at pp. 16–17 & 18–19.
[171] *Id.* at pp. 17–18.

on September 7, 2017, and that she never used a certain phone number.[172]  The facts underlying this offense are closely connected to the facts underlying the counts against Giles, the King Firm, and the Motta Defendants, rendering joinder proper under Rule 8(b).

The Court reaches the same conclusion as to counts nine through thirteen, which charge Alfortish and Parker with conspiracy to commit witness tampering through murder, witness tampering through murder, conspiracy to retaliate against a witness through murder, retaliation against a witness through murder, and causing death through use of a firearm, which are all based upon Garrison's September 22, 2020 murder.[173]  In count nine, the Government alleges that Garrison began covertly cooperating with the federal government concerning the staged collision scheme in or around October 2019, and that he was charged in an indictment on or about September 18, 2020, with conspiracy to commit mail fraud and other offenses related to staged collisions.[174]  The Government further alleges that, "Garrison's indictment contained information that he provided over the course of his cooperation in the federal criminal investigation."[175]  The Government then alleges in counts nine through thirteen that Alfortish and Parker conspired to kill Garrison "with the intent to prevent communications by Garrison to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a

---

[172] *Id*. at pp. 19– 20.
[173] *Id*. at pp. 20–23.
[174] *Id*. at p. 20.
[175] *Id*.

federal offense"[176] or "with the intent to retaliate against Garrison for providing to a law enforcement officer information relating to the commission of a federal offense."[177]

Based upon the allegations in the second superseding indictment, the facts underlying the murder charges against Parker and Alfortish substantially overlap with, and stem from, Garrison's participation in the conspiracy alleged in count one and his covert cooperation with the federal investigation into the staged collision scheme. The murder charges also seem to be closely connected to the Government's allegations in count one of the second superseding indictment that insurance defense attorneys representing companies targeted by the staged collision scheme began raising the defense of fraud in lawsuits involving Giles and the King Firm in 2017 and began raising that defense in lawsuits involving the Motta Defendants in 2018,[178] and the allegations that Giles, the King Firm, and the Motta Defendants became aware of the federal criminal investigation into the staged collision scheme in or around 2019.[179] The Court finds that the facts underlying the murder charges and the charges against Giles and the King Firm "are so closely connected that proof of such facts is necessary to establish each offense," rendering joinder of the defendants and the offenses proper.[180] As in *United States v. McRae*, the Court finds that the conspiracy allegations in count one, including that Garrison was covertly cooperating

---

[176] *Id*. at pp. 20–21.
[177] *Id*. at pp. 21–22.
[178] *Id*. at pp. 11 & 15, ¶¶ 15 & 27.
[179] *Id*. at pp. 11 & 15, ¶¶ 17 & 27.
[180] *United States v. Harrelson*, 754 F.2d 1153, 1176–77 (5th Cir. 1985) (quoting *United States v. Gentile*, 495 F.2d 626, 63- (5th Cir. 1974)) (citation modified).

with a federal investigation into the staged automobile collision scheme, connect Giles, the King Firm, and the Motta Defendants to the allegations against Alfortish and Parker in the murder charges.[181]

The Court also finds that, like in *McRae*, the charges in the second superseding indictment "build upon one another:" beginning with the defendants engaging in a conspiracy involving staged automobile collisions, fraudulent lawsuits, and fraudulent insurance claims, moving to efforts to obstruct or attempt to obstruct the investigation by some defendants, and culminating in Alfortish and Parker murdering Garrison to end his cooperation in the investigation. Based upon the continuity of facts, the Court concludes that the second superseding indictment alleges a series of acts unified by substantial identity of facts and that joinder of the offenses was proper under Rule 8(b).[182]

## C. Prejudicial joinder under Fed. R. Crim. P. 14

While the Court has determined that Giles, the King Firm, the Motta Defendants, Alfortish, Parker, Stalbert, Morgan, and Lawrence were properly joined in the second superseding indictment, the Court must consider whether joinder is prejudicial to either the defendants or the Government. Giles and the King Firm assert that they will be unfairly prejudiced if forced to proceed to a joint trial with their co-defendants because they "have nothing to do with the alleged murder charges and nearly half of the charges alleged in the Indictment," and because a jury will not be able to differentiate between the specific acts and allegations pertaining to each

---

[181] *McRae*, 702 F.3d 806, 821 (5th Cir. 2012).
[182] *Id.* at 821.

defendant.[183]  Giles and the King Firm claim that they would also be prejudiced from the possible "spillover" and discrepancy in the amount of evidence applicable to various co-defendants.[184]  Giles and the King Firm point out that there are no allegations against them regarding Garrison's murder, and that the Government's version of the facts is that Garrison stopped working with Giles and the King Firm years before he entered into a conspiracy with the other defendants charged in this case, which allegedly resulted in his murder.[185]  Relying upon the *McRae* case, Giles and the King Firm assert that evidence regarding the murder will "prejudicially spill over and taint the eyes of the jury against Giles and the King Firm," who are not alleged to have played a role in the murder.[186]

To illustrate their point, Giles and the King Firm point out that the Government intends to introduce statements made by Garrison against other defendants, including Alfortish, Parker, and Motta, under a forfeiture by wrongdoing exception to the hearsay rule.[187]  Giles and the King Firm argue that the exception should not apply to them because they had no association with the murder and, unlike other defendants, Giles and the King Firm did not know Garrison.[188]  Giles and the King Firm contend that they would be severely prejudiced by the introduction of this evidence, and that it would be nearly impossible for a jury to disregard the evidence

---

[183] R. Doc. 216-1 at p. 10.
[184] *Id.*
[185] *Id.* at p. 11.
[186] *Id.* at p. 12.
[187] *Id.* at p. 10.
[188] *Id.* at pp. 10–11.  The Government conceded at the May 27, 2025 hearing, and in its Opposition brief, that no evidence suggests that Giles or the King Firm were part of the scheme to murder Garrison.  *See* R. Doc. 302 at p. 44.

as to them.[189]  Giles and the King Firm argue that jury instructions will not suffice to quell the emotions of a jury presented with evidence of an alleged murder, witness tampering, obstruction, and false statements that have nothing to do with them.[190] Giles and the King Firm claim that a joint trial will create jury confusion regarding which charges, facts, and events apply to which defendants, and that any delay in the trial due to the Government pursuing charges against Alfortish and Parker for Garrison's murder will violate their speedy trial rights.[191]  As such, Giles and the King Firm argue that their trial should be severed from their co-defendants under Rule 14(a).

The Motta Defendants similarly argue that the murder charges in counts nine through thirteen of the second superseding indictment should be severed pursuant to Rule 14 because Motta is accused of engaging in financial fraud and will be unduly prejudiced if she is tried alongside Parker and Alfortish, who are charged with Garrison's murder.[192]  The Motta Defendants claim that although Motta is not charged with participating in the murder, "a jury will be unable to separate her close relationship with Alfortish as a basis to hold her accountable for [the murder]."[193] Relying on the *McRae* case, the Motta Defendants argue that they will be unduly prejudiced by the evidence introduced by the Government regarding the murder, including photographs of the victim's "bullet ridden body and emotionally charged

---

[189] R. Doc. 216-1 at pp. 10–11.
[190] *Id*. at p. 12.
[191] *Id*. at pp. 12–13.
[192] R. Doc. 271-1 at p. 4.
[193] *Id*.

testimony from his mother, who was present when he was killed," because the jury will associate her with Garrison's murder.[194]  As such, the Motta Defendants argue that the murder charges should not be tried with the remaining non-violent charges in the second superseding indictment.

The Government argues that the defendants have not demonstrated that they are entitled to severance of the fraud counts under Rule 14 because there is substantial overlap between the counts against Alfortish and the Motta Defendants and the counts against Giles and the King Firm.[195]  In addition to the overlap with Garrison and Attorney C, as previously discussed, the Government asserts that Giles and the King Firm communicated with other attorneys, including Motta, regarding how to address the allegations of fraud from the insurance defense law firms, and that their communications with Motta became more regular as the fraud allegations gained traction.[196]  The Government claims that there is a substantial overlap in the evidence that it intends to introduce against Giles, the King Firm, and the Motta Defendants, and that defendants' general claims of spillover prejudice and jury confusion are not sufficient to warrant severance.[197]

The Government further asserts that defendants have failed to show that they are entitled to severance of the murder charges because Garrison's murder was part of the conspiracy charged in count one and followed months of misconduct by Alfortish

---

[194] *Id*. at pp. 4–5 (citing *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012)).
[195] R. Doc. 302 at p. 41.
[196] *Id*. at pp. 41–42.  *See Id*. at p. 10 (*citing* R. Doc. 302-2) & pp. 20–21 (*citing* R. Docs. 302-13, 302-14, & 302-15).
[197] R. Doc. 302 at p. 42 (*citing* R. Doc. 216-1 at p. 10).

and the Motta Defendants to prevent Garrison from cooperating with the federal investigation in this matter.[198]  The Government points out that because Giles and the King Firm secured a large settlement for Parker stemming from a January 17, 2016 staged collision, the Government will need to establish Parker's relationship with Garrison at trial, including that Parker murdered Garrison to prevent him from cooperating with the federal criminal investigation, which the Government claims is important probative evidence as to the guilt of Giles and the King Firm.[199]  Similarly, the Government asserts that because Garrison, Alfortish, Parker, and Harris participated in the staged collision scheme and had significant ties to Motta, it will be necessary in any trial against the Motta Defendants to establish that Motta's fiancé (Alfortish) schemed with one of her clients (Harris) to pay another one of her clients (Parker) to murder a third client (Garrison), whom they all knew was cooperating with the federal investigation.[200]  In other words, the Government claims that evidence that Alfortish, Parker, and Harris obstructed justice by murdering Garrison is proof that they were part of the staged collision scheme and, by extension, so was Motta.[201]

The Government advises that it intends to structure its case in a way that it will be clear to the jury who was involved in the murder and that a limiting instruction will be sufficient, since there is no evidence that Giles and the King Firm were part of the scheme to murder Garrison "and the government does not intend to

---

[198] R. Doc. 302 at p. 43.
[199] *Id.*
[200] *Id.* at p. 44.
[201] *Id.*

argue that they were.  Indeed, the Government would stipulate that Giles and the King Firm were not involved with the murder and would assist in crafting a jury instruction to that effect."[202]  The Government argues that the *McRae* case is distinguishable because the defendants in that case were not charged in a conspiracy, but were tried as if they were which, when combined with the admission of inflammatory and prejudicial evidence, resulted in a jury convicting them for a conspiracy they were not charged with committing.[203]  The Government asserts that, unlike in *McRae*, the defendants in this case are charged with a conspiracy, the evidence clearly implicates certain defendants and not others, and the Government plans to be more conscientious with its presentation of the case.[204]  As such, the Government maintains that defendants have not carried their burden of proving prejudicial joinder under Rule 14, and that their Motions to Sever should be denied.

In response, the Motta Defendants assert that the Government made "a startling and flawed legal assertion" by admitting in its Opposition brief that it intends to use evidence of Garrison's murder against the Motta Defendants, even though they have not been charged with his murder.[205]  The Motta Defendants argue that evidence regarding Garrison's death is not relevant to the charges pending against them under Federal Rule of Evidence 401 and, even if it was relevant, it would be unduly prejudicial under Federal Rule of Evidence 403.[206]  The Motta

---

[202] *Id*.
[203] *Id*. at pp. 45–46 (citing *United States v. McRae*, 702 F.3d 806, 824, 826 (5th Cir. 2012)).
[204] R. Doc. 302 at p. 46.
[205] R. Doc. 309 at p. 1 (*quoting* R. Doc. 298 at p. 44).
[206] R. Doc. 309 at p. 1.

Defendants assert that the murder charges should be tried separately based on the Government's admission that it intends to argue to the jury that Garrison's death is evidence of Motta's guilt in the fraud conspiracy, which directly contradicts the Government's claim that it will structure its case in a way that it will be clear who was involved in Garrison's murder.[207]  The Motta Defendants further assert that the murder charges should be severed from the fraud charges due to the incompatibility of Motta's and Giles' rights under the Speedy Trial Act and the murder defendants' constitutional rights to an effective defense.[208]  The Motta Defendants point out that the Court has already granted one trial continuance, that the trial is presently set for September 8, 2025, nine months from Motta's initial appearance, and that the murder defendants are likely to request another continuance until late 2026.[209]  The Motta Defendants argue that Motta is entitled to a speedy trial as a legal, and practical, matter, as she has been suspended from the practice of law and earning a living, she has been "debanked," and she has a child with serious health conditions.[210]  For these reasons, the Motta Defendants maintain that they are entitled to severance of the murder charges.

Giles and the King Firm likewise maintain in their Reply brief that the murder charges should be severed under Rule 14 because the Government has admitted that

---

[207] *Id*. at p. 2.

[208] *Id*.

[209] *Id*.  Since the filing of the Motta Defendants' Motion to Sever, Alfortish and Parker have filed a Motion to Continue, requesting that the trial be continued until spring or summer of 2026.  R. Doc. 323.  Alfortish and Parker also advise that they do not believe it is realistically possible for them to develop a constitutionally adequate defense to the charges against them in time for a September trial in light of the voluminous discovery which, to date, consists of more than 3 million Bates numbered items.  *Id*. at ¶¶ 7 & 8.

[210] R. Doc. 309 at p. 2.

they had no involvement in Garrison's murder, and further assert that they have no connection to Garrison and will submit evidence at the May 27, 2025 hearing confirming that Garrison did not refer Parker or Morgan to the King Firm.[211]  Giles and the King Firm also maintain their rights to a speedy trial and assert that any trial against them should be severed from their co-defendants.[212]

### 1. *Prejudicial joinder of offenses*

To the extent that Giles and the King Firm seek to sever the four charges against them from the charges against all of their co-defendants, including those charged similarly with mail fraud, obstruction of justice and false statements, the Court finds that Giles and the King Firm have brushed with too broad a stroke and failed to show they will be prejudiced by a joint trial of the offenses under Rule 14. While Giles and the King Firm claim that they would be prejudiced from the possible "spillover" and discrepancy in the amount of evidence applicable to various co-defendants, including statements made by Garrison that will be introduced as to their co-defendants,[213] the Fifth Circuit has repeatedly held that, "[m]erely alleging a spillover effect—whereby the jury imputes the defendant's guilt based on evidence presented against his co-defendants—is an insufficient predicate for a motion to

---

[211] R. Doc. 310 at pp. 1–3.  The Court notes that the evidence referenced by Giles and the King Firm was filed into the record under seal during the May 27, 2025 hearing, over the objections of counsel for Morgan.  *See* R. Docs. 311-1, 311-2, & 311-3.

[212] R. Doc. 310 at p. 3.  The Court requested supplemental briefing from the parties addressing any legal authority from within the Fifth Circuit regarding whether a defendant's right to a speedy trial under 18 U.S.C. 3161, et seq. or a defendant's right to effective assistance of counsel is the type of "specific trial right" the compromise of which would support severance under Federal Rule of Criminal Procedure 14(a).  *See* R. Doc. 352.  The Government and the Motta Defendants filed supplemental briefing.  *See* R. Docs. 354 & 355, respectively.

[213] R. Doc. 216-1 at pp. 10–11; R. Doc. 310 at p. 2.

sever."[214]  The Fifth Circuit has also specifically held that, "in conspiracy cases we generally favor specific instructions over severance.  That is because it is 'generally presumed that juries follow the instructions given to them by the district court' and are capable of 'compartmentalizing the evidence against each defendant.'"[215]  In light of this authority, the Court finds that Giles and the King Firm have failed to show that they will be prejudiced by the joinder of their charges with the other fraud charges against their co-defendants.

While Giles and the King Firm further claim that they will be prejudiced by the possible introduction of statements made by Garrison to law enforcement and others,[216] including statements that the Government intends to introduce against Alfortish and Parker under a forfeiture by wrongdoing exception to the hearsay rule, Giles and the King Firm failed to provide any specifics regarding such statements. As a result, the Court determined that a thorough analysis of the Government's Motion to Admit Statements Under the Forfeiture by Wrongdoing Exception[217] was necessary to understand the statements that the Government is seeking to introduce. With that in mind, the Court found it appropriate to review and consider the Government's motion, as well as the exhibits attached thereto that include numerous

---

[214] *United States v. Reed*, 908 F.3d 102, 114 (5th Cir. 2018) (quoting *United States v. Chapman*, 851 F.3d 363, 379 (5th Cir. 2017)) (citation modified).  *See United States v. Ledezma–Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018) (quoting *United States v. Krout*, 66 F.3d 1420, 1430 (5th Cir. 1995); *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012)) ("General allegations of prejudice will not suffice, for 'neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance.'").
[215] *Ledezma–Cepeda*, 894 F.3d at 690 (quoting *Chapman*, 851 F.3d at 380; *United States v. Cihak*, 137 F.3d 252, 259 (5th Cir. 1998); *United States v. Tarango,* 396 F.3d 666, 677 (5th Cir. 2005)) (citation modified).
[216] *See* R. Doc. 216-1 at pp. 10–11; R. Doc. 310 at p. 2.  *See also* R. Doc. 227.
[217] R. Doc. 227.

statements attributed to Garrison,[218] the four opposition briefs,[219] and the Government's reply brief.[220]  To be clear, the Court is not ruling on the admissibility of those statements in this Order.  The hearing on the Government's motion will be set for a future date.[221]

While the Government does seek to introduce statements under the forfeiture by wrongdoing exception against Alfortish, Parker, and Motta, admission of evidence or statements against one defendant that may not apply to another defendant, on its own, does not warrant severance.[222]  Indeed, it is not unusual in a multi-defendant case to have some evidence introduced that only applies to one or two defendants, and may not apply or be relevant to other defendants.  It is in this context that a limiting instruction, timely brought to the jury's attention prior to the introduction of the statement, with the Court reminding the jury of the limiting instruction throughout the trial where appropriate, is most effective.[223]  Without ruling on the admissibility of any of the statements, the Court further points out that the Government also intends to seek introduction of Garrison's statements regarding the fraudulent accidents against Giles and the King Firm.  Again, the mere introduction of

---

[218] *See* R. Docs. 227-4 through 227-19.
[219] R. Docs. 240, 262, 292, & 340.
[220] R. Docs. 346 & 350.
[221] *See* R. Doc. 351.
[222] *See United States v. Chapman*, 851 F.3d 363, 380 (5th Cir. 2017) (quoting *United States v. Owens*, 683 F.3d 93, 100 (5th Cir. 2012)) (citation modified)  ("We have held that severance is required on the basis of disparity in the evidence only in the most *extreme* cases.").
[223] *See United State v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018) (quoting *Chapman,* 851 F.3d at 380) (citation modified) ("it is generally presumed that juries follow the instructions given to them by the district court").

statements against one or more co-defendant and not against others in this case does not, alone, warrant severance.

The Court, however, reaches the opposite conclusion regarding the defendants' request to sever the murder charges from the fraud counts. The Government has conceded, in its Opposition brief and during the May 27, 2025 hearing, that Giles, the King Firm, Morgan, Lawrence, and Stalbert had no knowledge or connection to Garrison's alleged murder. Indeed, the Government has offered to stipulate that it does not have any evidence to tie those defendants to Garrison's murder.[224] The Court therefore finds the *McRae* case instructive.[225] In *McRae*, New Orleans Police Department ("NOPD") Officer David Warren was charged and tried alongside other NOPD officers in connection with the death, burning, and cover-up of Henry Glover's death in the days after Hurricane Katrina made landfall in New Orleans on August 29, 2005. Warren was charged with shooting Glover, while other officers, including Gregory McRae, were charged for conduct that occurred without Warren or his knowledge after the shooting, namely burning Glover's body and falsifying records surrounding Glover's death.[226] The district court denied Warren's repeated motions to sever that were filed before, during, and at the conclusion of the trial, opting instead to provide limiting instructions to the jury.[227]

The officers were convicted and filed appeals, with Warren arguing that the district court erred in denying his motions to sever based on misjoinder under Rule

---

[224] R. Doc. 302 at p. 41.
[225] *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012).
[226] *Id*. at 811–20.
[227] *Id*. at 816.

8(b) and prejudicial joinder under Rule 14(a) of the Federal Rules of Criminal Procedure.[228]   After finding that joinder was proper under Rule 8(b),[229] the Fifth Circuit concluded that joinder was prejudicial under Rule 14 because the charge against Warren – that he acted unlawfully in shooting Glover – was only tangentially relevant to the crime of obstruction related to Glover's death and the alleged cover-up of his death by co-defendants.[230]   In reaching this conclusion, the Fifth Circuit noted that the co-defendants could have been convicted even if Warren had been found innocent because it was apparent during the trial that "very little of the evidence of the alleged cover-ups was properly usable against Warren, and that almost none of it applied directly to him."[231]   The Fifth Circuit, however, found that Warren "was clearly prejudiced from the joint trial" and that there may have been a different result if he had not been tried with his co-defendants because while no conspiracy was charged among the defendants, the Government attempted to try the case against each defendant as a conspiracy.[232]   The Fifth Circuit further held that, "[t]he most compelling prejudice, in our mind, resulted from the evidence, testimony, and photographs presented in connection with the government's case against McRae for the burning of Glover's body, all of which had an effect of associating Warren with the burning of Glover's body and subsequent cover-up."[233]   The Fifth Circuit was especially troubled by the photographs of Glover's remains after they had been

---

[228] *Id*. at 820.
[229] *Id*. at 821.
[230] *Id*. at 823.
[231] *Id*.
[232] *Id*. at 826.
[233] *Id*. at 826–27.

burned and the emotional testimony of Glover's family, some of which would have been inadmissible against Warren had he been tried alone and which prejudiced Warren.[234]  Under these circumstances, the Fifth Circuit concluded that Warren had cited specific and compelling instances of prejudice that resulted from joinder at trial with his co-defendant and that limiting instructions did not cure the prejudice.[235]

As in *McRae*, the Court finds that Giles, the King Firm, Stalbert, Morgan, and Lawrence will be prejudiced if their fraud and obstruction charges are joined with the murder charges pending against Alfortish and Parker.  As the Motta Defendants point out, the Government is likely to introduce at trial photographs of Garrison's "bullet ridden body" and the emotionally charged testimony of his mother, who was present when he was killed.  The Court agrees with Giles and the King Firm that such evidence is irrelevant and inflammatory to the defendants who are not charged with Garrison's murder.  The Court further finds that, because all of the defendants are charged with the conspiracy in count one of the second superseding indictment, which references Garrison's cooperation with the federal criminal investigation into the staged collisions, evidence pertaining only to the murder is likely to spillover and prejudice Giles, the King Firm, Stalbert, Morgan, and Lawrence who, the Government admits, have no connection to the murder.  The Court likewise finds that additional limiting jury instructions will not be enough to cure the prejudice, as it will be difficult for a jury to separate the conspiracy from a murder that was allegedly committed to cover-up the conspiracy.  To the extent that the Government, in its

---

[234] *Id*. at 827.
[235] *Id*. at 827–28.

Opposition brief, points out that the Fifth Circuit has vacated convictions because of spillover prejudice and jury confusion "in cases with unique and stark facts absent in most multidefendant trials,"[236] the Court points to the unique and stark facts present in this case. This is an admittedly complex case, 11 defendants are charged with a multi-year conspiracy involving attorneys, there has been voluminous discovery from the government to the defendants which remains ongoing, and some of the charges against some of the defendants include the murder of a government witness. In addition, as noted, the Government has noticed their intent to introduce statements made by the deceased witness as to some of the defendants under a forfeiture by wrongdoing exception.    If admitted, those will already necessitate limiting instructions. Further limiting instructions regarding the murder charges, evidence introduced to prove the murder charges only against Alfortish and Parker are likely to jury confusion instead of jury clarification. Accordingly, the Court finds that Giles, the King Firm, Stalbert, Morgan, and Lawrence have carried their burden of proving prejudicial joinder of the murder charges under Rule 14(a), and that the murder charges against Alfortish and Parker should be severed from the counts against these defendants in the second superseding indictment.

The Court reaches the same conclusion as to the Motta Defendants.  While the Motta Defendants are charged with obstruction of justice and witness tampering based upon their attempts to prevent Garrison from cooperating with the grand jury's investigation into the staged collision scheme and from providing testimony to the

---

[236] R. Doc. 302 at p. 40 (citing authority).

grand jury, they are not charged with Garrison's murder. The Government, however, has alleged, in both its Opposition brief and during the May 27, 2025 hearing, that Motta was aware of the conspiracy to kill Garrison and, at a minimum, did nothing to stop it.[237] More importantly, the Government admits in its Opposition brief that it intends to rely on evidence showing that Alfortish, Parker, and Harris murdered Garrison to prove that "they were part of the staged collision scheme and, by extension, that Motta was as well."[238] The Government offers no further explanation or justification for this assertion. It appears that the Government may also seek to introduce evidence at trial regarding Motta's personal relationship with Alfortish, her fiancé, to support its case against her for fraud and obstruction of justice.[239] The Fifth Circuit has held that severance is proper when there is "clear, specific and compelling prejudice to the defendant," [240] and that such prejudice can occur when the government adds counts "solely to buttress its case on the other counts in an attempt to shore up its thin evidence on those counts."[241] The Government has advised that it intends to use evidence regarding the murder charges to support the fraud and obstruction of justice charges pending against the Motta Defendants.[242] The Court therefore finds that the Motta Defendants have carried their heavy burden of showing

---

[237] *See Id.* at p. 31, n.17.

[238] *Id.* at p. 44.

[239] *See Id.* at p. 31, n.17.

[240] *United States v. Ashley*, 128 F.4th 641, 655 (5th Cir. 2025) (quoting *United States v. Huntsberry*, 956 F.3d 270, 287 (5th Cir. 2020)) (citation modified).

[241] *Ashley*, 128 F.4th at 655 (quoting *United States v. McCarter*, 316 F.3d 536, 540 (5th Cir. 2002)) (citation modified).

[242] The Court makes no ruling on the admissibility of this evidence.

that they will be prejudiced by a joint trial involving the murder charges, and that severance of the murder charges is warranted under Rule 14(a).

Fully satisfied that the defendants have carried their burden of showing specific and compelling prejudice to warrant severance of the murder counts, the Court addresses the defendants' further arguments. The Motta Defendants, Giles, and the King Firm further assert that a joint trial will violate each of their speedy trial rights because Parker and Alfortish are likely to seek a trial continuance until 2026.[243] The Motta Defendants assert, in passing, that they "are ready for trial and maintain their rights to a speedy trial,"[244] while Giles and the King Firm assert that the delay caused by their joint trial with Alfortish and Parker will violate their speedy trial rights.[245]

At the request of the Court, the Government and the Motta Defendants provided supplemental briefing addressing "any legal authority from within the Fifth Circuit regarding whether a defendant's right to a speedy trial under 18 U.S.C. § 3161, *et seq.* or a defendant's right to effective assistance of counsel is a type of 'specific trial right' the compromise of which would support severance under Federal Rule of Criminal Procedure 14(a)."[246] The Government and the Motta Defendants

---

[243] Alfortish and Parker have since filed a Motion to Continue Trial and Pretrial Dates, seeking "a new trial date in the Spring or Summer 2026," and claiming that their clients may be denied effective assistance of counsel if ordered to proceed to trial in September as scheduled. R. Doc. 323. That motion remains pending.

[244] R. Doc. 271 at p. 1.

[245] R. Doc. 216-1 at p. 13.

[246] R. Doc. 352 at p. 1 (citing *Zafiro v. United States*, 506 U.S. 534, 538–39, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993)). *See* R. Docs. 354 & 355. The Court notes that all of the defendants were given the opportunity to file a supplemental brief "if desired." R. Doc. 352 at p. 1. The Government and the Motta Defendants were the only parties that filed supplemental briefs.

agree that a defendant's right to a speedy trial constitutes a "specific trial right" for purposes of prejudicial joinder under Fed. R. Crim. P. 14(a), but disagree as to whether failure to sever Motta's trial will violate her speedy trial rights.[247]  Neither the Government nor the Motta Defendants found authority from the Fifth Circuit explicitly recognizing a defendant's Sixth Amendment right to effective assistance of counsel as a "specific trial right" for purposes of Rule 14(a).[248]  While the Government asserts that such a finding is implicit in certain cases from within this Circuit,[249] both the Government and the Motta Defendants cite out-of-circuit authority to suggest that the right to effective assistance of counsel is also a specific trial right.[250] Following receipt of the supplemental briefs, and based upon the Court's own research, the Court finds it appropriate to conduct an analysis of whether failure to sever will result in the violation of the speedy trial rights of Giles, the King Firm, and the Motta Defendants.

"The Speedy Trial Act requires that a court conduct a defendant's trial within seventy days of the indictment or when the defendant first appears before the court, whichever is later."[251]  But certain actions, set forth in 18 U.S.C. § 3161(h), toll the seventy-day clock.   For instance, § 3161(h)(6) provides for the exclusion of a

---

[247] R. Doc. 354 at pp. 1–4; R. Doc. 355 at pp. 1–4.

[248] R. Doc. 354 at p. 4; R. Doc. 355 at p. 4, n.11.

[249] R. Doc. 354 at pp. 4–5 (citing *United States v. George,* Crim. A. No. 17-201, 2019 WL 4194526, at *13–14 (E.D. La. Sept. 4, 2019) (Africk, J.)).

[250] R. Doc. 354 at pp. 4–5 (citing *United States v. Poulsen,* Crim. A. No. CR2-06-129, 2008 WL 77745, at *1–2 (S.D. Ohio Jan. 4, 2008) (Marbley, J.); *United States v. Ailsworth,* 873 F. Supp. 1450, 1456 (D. Kan. 1994)); R. Doc. 355 at p. 4, n.11 (citing *United States v. Hicks,* Crim. A. No. 15-CR-33-A, 2017 WL 4541013, at *2 (W.D.N.Y. Oct. 11, 2017) (Arcara, J.) *aff'd by United States v. Hicks,* 5 F.4th 270 (2d Cir. 2021); *United States v. Ferguson,* 246 F.R.D. 107, 127 (D. Conn. 2007)).

[251] *United States v. Carter,* Crim. A. No. 12-198, 2015 WL 1897613, at *2 (E.D. La. Apr. 27, 2015) (Vance, J.) (*citing* 18 U.S.C. § 3161).

"reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."[252] While this means that the excludable delay for one codefendant may be attributable to all codefendants, such attribution is not automatic; rather, the period of delay must be reasonable.[253] According to the Fifth Circuit, the reasonableness of the delay can be measured in reference to either: (1) the totality of the circumstances prior to trial; or (2) the actual prejudice suffered by the appellant as a result of the delay.[254] "In examining the totality of the circumstances of the case, our inquiry focuses on the necessity of the delay, giving proper consideration to the purpose behind [§ 3161(h)(7)]—accommodating the efficient use of the prosecutorial and judicial resources in trying multiple defendants in a single trial."[255] For the prejudice analysis, "relevant considerations include whether the delay impaired the appellant's ability to defend himself or resulted in excessive pretrial incarceration."[256]

While Giles, the King Firm, and the Motta Defendants contend that they are ready to proceed with trial and assert their rights under the Speedy Trial Act, the excludable delays from the prior trial continuance[257] and the pending Motion to Continue Trial and Pretrial Dates filed by Alfortish and Parker[258] are attributable to them since no motion to sever has been granted and such delay is reasonable under

---

[252] 18 U.S.C. § 3161(h)(6).
[253] *United States v. Stephens*, 489 F.3d 647, 654 (5th Cir. 2007) (quoting *United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998)) (citation modified).
[254] *Stephens*, 489 F.3d at 654 (quoting *Franklin*, 148 F.3d at 457) (citation modified).
[255] *Stephens*, 489 F.3d at 654 (quoting *United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002)) (citation modified).
[256] *Stephens*, 489 F.3d at 654 (quoting *Franklin*, 148 F.3d at 457) (citation modified).
[257] *See* R. Docs. 202 & 208.
[258] R. Doc. 323.

the circumstances. Moreover, Giles, the King Firm, and the Motta Defendants have contributed to the length of the pretrial delay by filing their motions to sever, "as the Court's consideration of pretrial motions is an excludable delay under the Speedy Trial Act."[259] According to 18 U.S.C. § 3161(h)(1)(D), the "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excludable time in calculating the time within which trial must commence for a defendant. Further, the Court recognizes the complexity of this case which involves over three million Bates-numbered items, multiple defendants, including attorneys alleged to have engaged in activities within the course of their profession, charges ranging from wire fraud to murder, and a motion by the Government to include statements made by the murdered witness. The Court has specifically found that the ends of justice served by a continuance outweigh the best interests of the public and the defendant in a speedy trial. The Court therefore finds that proceeding with a joint trial has not compromised the Speedy Trial Act rights of Giles, the King Firm, or the Motta Defendants, and that severance is not warranted on the basis of a purported violation of those rights.

To the extent Giles, the King Firm, and the Motta Defendants also assert their rights to a speedy trial under the Sixth Amendment, the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a

---

[259] *United States v. Moreno*, Crim. A. No. 15-76, 2017 WL 2256811, at *6 (E.D. La. May 23, 2017) (Engelhardt, J.).

speedy and public trial."[260]  In determining whether a defendant's constitutional right to a speedy trial has been violated, the Fifth Circuit balances the following four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.[261]  The Fifth Circuit has held that if the first three factors weigh heavily in the defendant's favor, then prejudice may be presumed.[262]  If, however, these factors do not weigh heavily in the defendant's favor, then the defendant must demonstrate actual prejudice.[263]

Regarding the first, threshold factor, the Fifth Circuit has held that when more than one year has passed before commencement of trial, the delay is deemed presumptively prejudicial and the court should undertake a full analysis, considering the first three factors to decide whether prejudice will be presumed.[264]  However, the Fifth Circuit has also held that, "delays of less than five years are not enough, by duration alone, to presume prejudice."[265]  Here, approximately nine months will pass between the date on which the Motta Defendants, Giles, and the King Firm were named in the superseding indictment, which was filed on December 6, 2024,[266] and trial, which is presently set to begin on September 8, 2025.  Accordingly the Court

---

[260] U.S. CONST. amend. VI.

[261] *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

[262] *Harris*, 566 F.3d at 432 (quoting *United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007)) (citation modified).

[263] *Harris*, 566 F.3d at 432 (quoting *Parker*, 505 F.3d at 328).

[264] *Harris*, 566 F.3d at 432 (quoting *Parker*, 505 F.3d at 328) (citation modified).  *See United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009) (quoting *Parker*, 505 F.3d at 328) (same).

[265] *Harris*, 566 F.3d at 432 (quoting *Parker*, 505 F.3d at 328–29) (citation modified).

[266] R. Doc. 78.

does not find a presumption of prejudice based solely on the time from indictment to trial.[267]

As to the second factor, the reason for the delay, the Supreme Court has warned that "pretrial delay is often both inevitable and wholly justifiable."[268] The Fifth Circuit has advised courts to "attach great weight" to considerations like "time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down."[269] The Fifth Circuit has further held that, "[p]rejudice will never be presumed where the government has pursued the defendant with reasonable diligence from his indictment to his arrest. Conversely, where the Government acts in bad faith, delaying prosecution in order to gain an impermissible advantage at trial, the delay will weigh heavily in favor of the defendant."[270] Here, there is no evidence that the Government has acted in bad faith to prejudice the defendants or negligently prosecuted the Motta Defendants, Giles, or the King Firm.[271] The Court further finds that neither the Motta Defendants nor Giles or the

---

[267] *See United States v. Moreno*, Crim. A. No. 15-76, 2017 WL 2256811, at *6 (E.D. La. May 23, 2017) (citing *United States v. Hernandez,* 457 F.3d 416, 421 (5th Cir. 2006)) ("As to the first factor, the fourteen-month delay ... is far too short to weigh in favor of presuming prejudice."); *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) ("[T]his Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years. . . . In the instant case, the delay between indictment and trial was, at most, only three years and nine months, considerably less than the delay in the cases cited above. . . . Accordingly, the length of delay factor of the *Barker* balancing test does not weigh heavily in Serna's favor.") (citation modified)).

[268] *United States v. Neal*, 27 F.3d 1035, 1043 (5th Cir. 1994) (quoting *Doggett v. United States*, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)) (citation modified).

[269] *Molina-Solorio*, 577 F.3d at 305 (quoting *Doggett*, 505 U.S. at 656, 112 S.Ct. 2686) (citation modified).

[270] *Molina-Solorio*, 577 F.3d at 305 (quoting *Doggett*, 505 U.S. at 656. 112 S.Ct. 2686; *Serna-Villarreal*, 352 F.3d at 232) (citation modified).

[271] *See United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) (quoting *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007)) (citation modified) ("Further, Harris has presented no evidence that the Government acted in bad faith, intentionally holding up prosecution for the purpose of prejudicing the defendant.").

King Firm have contributed to the trial delay in this matter. The Court granted two unopposed motions to continue the trial that were filed by the Government in 2024 before the Motta Defendants, Giles, and the King Firm were named in the superseding indictment.[272] The Court granted a third motion to continue the trial filed by the Government in March 2025, over the objections of the Motta Defendants, Giles, and the King Firm, and set the trial for its current September 8, 2025 date.[273] In a detailed Order and Reasons, the Court explained why the ends of justice served by granting the requested continuance outweighed the best interest of the public and the defendants in a speedy trial due to the complexities of this case. As such, the Court finds that the second factor—the reason for the delay—is neutral.

The Court further finds that the third factor, the defendants' diligence in asserting their Sixth Amendment rights, weighs in favor of the Motta Defendants, Giles, and the King Firm. As described above, those defendants have neither moved for a continuance nor joined in the Government's request for a trial continuance.[274] Further, the Motta Defendants, Giles, and the King Firm have consistently maintained their right to a speedy trial in this matter.[275] As such, the Court finds that this factor weighs in favor of the Motta Defendants, Giles, and the King Firm.

Because the first three factors do not weigh heavily in favor of the Motta Defendants, Giles, and the King Firm, they are not entitled to a presumption of

---

[272] *See* R. Docs. 41, 43. 60, & 62.
[273] *See* R. Docs. 202, 204, 207, & 208.
[274] *See United States v. Carter*, Crim. A. No. 12-198, 2015 WL 1897613, at * 5 (E.D. La. Apr. 27, 2015) ("As detailed above, Carter either moved for a continuance or joined in a codefendants' motion to continue every time trial has been continued in this matter. Under such circumstances, it can hardly be said that Carter has diligently asserted his speedy trial rights.")
[275] *See* R. Docs. 204, 207, 216, 271, 325, 331, & 342.

prejudice and must demonstrate "actual prejudice" that outweighs the other factors.[276]  According to the Fifth Circuit, "[a]ctual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired."[277]  It is undisputed that neither Motta nor Giles are incarcerated, thereby mooting consideration of oppressive pretrial incarceration issues.   While Giles and the King Firm assert that they will be prejudiced from the spillover effect of the evidence concerning the murder counts,[278] the only argument made as to the prejudice caused by a trial delay is that, "[t]he trial of [Alfortish and Parker] will take a significant amount of time to get to trial.  Should the trial of Giles and the King Firm not be severed, the delay will violate the speedy trial rights of Giles and the King Firm."[279]  The Court finds that this conclusory statement fails to demonstrate that Giles and the King Firm will suffer actual prejudice from a trial continuance, especially in light of the fact that Giles is on bond.[280]  As such, the Court finds that the speedy trial rights of Giles and the King Firm will not be violated by proceeding to trial jointly with the remaining defendants.

The Motta Defendants similarly assert in their Motion that they will be prejudiced by the spillover effect of the evidence concerning the murder counts, but

---

[276] *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (citing *United States v. Frye*, 489 F.3d 201, 209 (5th Cir. 2007)).

[277] *Harris*, 566 F.3d at 433 (quoting *Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)) (citation modified).

[278] R. Doc. 216 at p. 1; R. Doc. 216-1 at pp. 10–12; R. Doc. 310 at p. 3.

[279] R. Doc. 216-1 at p. 13.

[280] *See* R. Docs. 137, 138, 313, & 321.

did not address any prejudice caused by a potential trial delay.[281]  In their Reply brief, however, the Motta Defendants assert that Motta is both entitled to a speedy trial and "in dire need of one" because she has been suspended from practicing law and earning a living, she has been "debanked," and she has a child with serious health conditions.[282]  The Government did not contest these assertions, in either its Opposition brief[283] or during the May 27th hearing.  The Court notes, however, that Motta is out on bond[284] and that a magistrate judge from this Court has determined that while Motta, as a condition of her bond, is not allowed to work as a paralegal at Motta Law, she may work as a paralegal for a duly authorized law firm with licensed members who are subject to the requirements of Rule 5.5e of the Louisiana Rules of Professional Conduct, or any nonlegal work.[285]  The Court finds that while Motta's ability to continue in her chosen work has been impaired while she awaits trial, the Motta Defendants have failed to show that such impairment is an interest "which the speedy trial right was designed to protect," nor has Motta provided any information supporting that she has been prevented from obtaining any other work.[286]  As previously mentioned, the Fifth Circuit has held that, "[a]ctual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to

---

[281] R. Doc. 271 at p. 1; R. Doc. 271-1 at pp. 1–2 & 4–6.
[282] R. Doc. 309 at p. 2.
[283] R. Doc. 302.
[284] R. Docs. 132, 133, 135, 164, & 176.
[285] *See* R. Doc. 176.
[286] *Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972).

limit the possibility that the defense will be impaired."[287]  The Motta Defendants do not allege that a joint trial or an additional trial delay will undermine any of these interests.  As such, the Motta Defendants have failed to demonstrate that they will suffer actual prejudice.  The Court therefore finds that the Motta Defendants' speedy trial rights will not be violated by proceeding to a joint trial with their codefendants.

### 2. Prejudicial joinder based upon a violation of Parker and Alfortish's rights to effective assistance of counsel

The Motta Defendants further assert in their Motion that, "[a]nother reason to sever the murder charges from the fraud charges is the inevitable incompatibility of Motta's (and Jason Giles') Speedy Trial Act rights and the murder defendants' constitutional right to a constitutionally effective defense."[288] Notably, the Motta Defendants do not address whether they have standing to assert a co-defendant's right to effective assistance of counsel.  More importantly, however, Parker and Alfortish did not join in the Motta Defendants' Motion to Sever and have since filed a Motion to Continue Trial and Pretrial Dates, seeking a trial continuance until the spring or summer of 2026.[289]  In the Motion to Continue, which remains pending before the Court, Alfortish and Parker assert that a continuation of the trial until 2026 is necessary to preserve their rights to due process and a constitutionally adequate defense.[290]  Alfortish and Parker have argued that  forcing them to go to

---

[287] *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182) (citation modified).

[288] R. Doc. 309 at p. 2.

[289] R. Doc. 323.

[290] *See* R. Doc. 323-1 at ¶¶ 7 & 8.  Alfortish and Parker have advised that Stalbert, Morgan, and Lawrence have no opposition to a trial continuance.  *Id.* at ¶ 9.

trial in a case that has been investigated by the Government for many years, which includes voluminous evidence provided by the Government, and only five months after the filing of the second superseding indictment charging them with Garrison's murder is unreasonable.[291]  Indeed, counsel for Alfortish made clear during the May 27 hearing and in a subsequent telephone status conference held on July 10, 2025 that he questioned whether he could provide effective representation for the murder charges under this tight trial deadline.  The Government did not address these arguments in either its Opposition brief or during the May 27th hearing.

The Motta Defendants have failed to show that raising the possibility of a violation of a co-defendant's right to effective assistance of counsel is an appropriate basis upon which to grant severance under Rule 14(a).  The Court further finds it more appropriate to address Alfortish and Parker's assertion of their right to effective assistance of counsel in the context of their Motion to Continue, where the issue has been properly raised and fully briefed by the parties.  As such, Giles, the King Firm, and the Motta Defendants are not entitled to severance under Rule 14(a) based upon the purported incompatibility of their speedy trial rights and Parker and Alfortish's right to effective assistance of counsel.

### 3.  Jury and limiting instructions will not suffice to cure the prejudice

The Court next addresses whether it can offer protection during the trial to cure any prejudice caused by a joint trial.  While the Government has advised that it will structure its case so as to make clear "who did what with respect to the murder"

---

[291] *Id.* at ¶ 7.  The second superseding indictment was filed April 25, 2025.  *See* R. Doc. 256.

to make a limiting instruction more impactful, it also conceded during the May 27th hearing that a trial of the murder charges would likely be less than one week while a trial as indicted as to all defendants is likely to last one month. Even assuming that the Court would give several limiting instructions throughout the trial, such instructions may likely be forgotten or lost in a month-long trial involving inflammatory evidence of witness tampering, obstruction, and the murder of a government witness. It is also not lost on the Court that the Government's assertion that a case as to the fraud claims may last one month raises significant questions about how the evidence offered as to the murder charges will impact the remainder of the trial.

In *McRae*, the Fifth Circuit reasoned that:

> We do not fault the district court for declining to sever Warren's case before trial, but as the trial progressed, however, and the evidence and testimony presented became irrelevant and unusable against Warren, and increasingly inflammatory to him, we are of the belief that limiting instructions could not mitigate the prejudice.[292]

The Court is facing a similar situation in this case, with the additional significant risks of potential Sixth Amendment violations, including the defendants' rights to a speedy trial and to effective representation, as well as potential violations of their due process rights. The Government argues that severance "would be inappropriate, both because it would be contrary to the public's interest in joint trials, and because it would not make anything any easier or more efficient."[293] While judicial efficiency would seem at first glance to support proceeding with one trial, after consideration of

---

[292] *United States v. McRae*, 702 F.3d 806, 828 (5th Cir. 2012).
[293] R. Doc. 302 at p. 42.

the above, and balancing the prejudice to the defendants against the interests of judicial efficiency, the Court instead finds that it would ensure a fair trial and be more efficient to sever and hold a separate trial for the murder charges against Alfortish and Parker—counts nine through thirteen. Severance may not be the easiest way to proceed, but it is the most constitutionally sound and fairest way to protect the rights of the accused in this case. Accordingly, Alfortish and Parker's murder counts, specifically, counts nine through thirteen, shall be severed from all of the other counts set forth in the second superseding indictment.

## IV. CONCLUSION

The Court has determined that the offenses and defendants were properly joined in the second superseding indictment under Federal Rule of Criminal Procedure 8(b). Ever mindful that a court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence, the Court has determined that this is indeed one of those cases where a joint trial that includes the murder charges in counts nine through thirteen against Alfortish and Parker would do just that. The unique facts of this case—a complex, multi-defendant case in which the Government concedes the defendants have markedly different degrees of culpability and that there will be evidence probative of one defendant's guilt which may not be admissible against a co-defendant, where two of the defendants are alleged to have had a witness murdered to prevent him from testifying, and where the Court will already very likely be giving

numerous limiting instructions as to which evidence is to be considered against which defendant—warrants severance under Rule 14. The Court is fully satisfied that the defendants have carried their "heavy burden" of showing "specific and compelling prejudice."[294]

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Sever Trial and Defendants on Behalf of Jason F. Giles and The King Law Firm, LLC[295] and the Motion to Sever Trial and Defendants on Behalf of Vanessa Motta and Motta Law, LLC[296] are **GRANTED in part and DENIED in part.** The Motion to Sever Trial and Defendants on Behalf of Vanessa Motta and Motta Law, LLC is **DENIED** to the extent that Vanessa Motta and Motta Law, LLC assert that they should be severed from Jason Giles and The King Law Firm, LLC and tried independently under Fed. R. Crim. P. 8(b). The Motion to Sever Trial and Defendants on Behalf of Jason F. Giles and The King Law Firm, LLC is also **DENIED** to the extent that Jason Giles and The King Law Firm, LLC seek to sever their trial from all of their co-defendants under Fed. R. Crim. P. 8(b) and seek an earlier trial date than September 8, 2025. The Motions are **GRANTED,** however, to the extent that Vanessa Motta, Motta Law, LLC, Jason Giles, and The King Law Firm, LLC seek severance of counts nine through thirteen of the second superseding indictment from the remaining counts of the second superseding indictment under Fed. R. Crim. P. 14(a). As such, all defendants shall proceed to trial as to counts one through eight in

---

[294] *United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir. 1994).
[295] R. Doc. 216.
[296] R. Doc. 271.

the second superseding indictment, and Alfortish and Parker shall proceed to trial

separately on counts nine through thirteen in the second superseding indictment.

New Orleans, Louisiana, July 25, 2025.

_Wendy B Vitter_
**WENDY B. VITTER**
**United States District Judge**