**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 24-105** |
| **RYAN J. HARRIS, ET AL.** | **SECTION: D (1)**<br>**This Order applies to**<br>**Jason F. Giles and The**<br>**King Firm, LLC** |

<u>**ORDER AND REASONS**</u>

Before the Court is Defendants Jason Giles and The King Firm's Motion to Dismiss Count 1(D), Paragraph 8 (To the Extent It Alleges a Conspiracy to Utilize "Runners") or, In the Alternative, to Strike Count 1(D), Paragraph 8 as Surplus and Prejudicial Language as to the Third Superseding Indictment.[1]  The Government opposes the Motion,[2] and Giles and the King Firm have filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the Court **DENIES** the Motion to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

This case involves several defendants who are charged with various crimes stemming from a years-long scheme to stage fake automobile collisions in the New Orleans metropolitan area and file fraudulent insurance claims and fraudulent

---

[1] R. Doc. 583.
[2] R. Doc. 634.
[3] R. Doc. 669.
[4] In the interest of judicial economy, and because the factual background of this case was extensively detailed in several prior Orders and Reasons issued by this Court (*See* R. Docs. 357, 481, 489, 641, 647, & 692), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

lawsuits based on the staged collisions.[5] That scheme allegedly involved "slammers" who drove automobiles and intentionally collided with 18-wheeler tractor-trailers and other commercial vehicles in order to stage collisions. Jason F. Giles and The King Firm, LLC (collectively, "Defendants") are charged in the Third Superseding Indictment with conspiracy to commit mail and wire fraud (Count 1), mail fraud (Count 2), obstruction of justice (Count 8), and witness tampering (Count 9).[6] The Government alleges in Count 1 that Damian Labeaud and Roderick Hickman staged automobile collisions for Defendants between 2011 and 2017, that Defendants knew the collisions were staged, and that Defendants paid Labeaud and Hickman for bringing them staged collisions.[7] In Counts 8 and 9, the Government alleges that Defendants secretly recorded Hickman and manipulated him into falsely stating that the collisions he and Labeaud staged were legitimate, and did so to obstruct or impede the grand jury's investigation into the staged collision scheme.[8]

Pertinent to the instant Motion, Count 1(D), Paragraph 8 of the Third Superseding Indictment states that, "[i]n addition to staging collisions, Labeaud and Hickman worked as illegal 'runners' for **GILES** and **THE KING FIRM**. As runners, Labeaud and Hickman referred individuals involved in automobile collisions to **GILES** and **THE KING FIRM** for money."[9] Defendants have now moved to dismiss or, alternatively, to strike Count 1(D), Paragraph 8 of the Third Superseding

---

[5] R. Docs. 1, 78, 256, & 517.
[6] R. Doc. 517 at pp. 1–18 & 21–22.
[7] *Id.* at pp. 7–10.
[8] *Id.* at pp. 21–22.
[9] *Id.* at p. 7.

Indictment pursuant to Rules 7(d) and 12(b)(3) of the Federal Rules of Criminal Procedure.[10]  Defendants seem to assert that Paragraph 8 will confuse the jury into convicting them for paying runners, a violation of Louisiana law, instead of convicting them for committing the charged conspiracy to commit mail and wire fraud.[11] Defendants argue that Paragraph 8 should be dismissed for failure to state an offense under Rule 12(b)(3) because it fails to describe a fraudulent scheme aimed at obtaining money or property in the hands of the victim, as required by Supreme Court and Fifth Circuit precedent.[12]  Alternatively, Defendants ask the Court to strike Paragraph 8 pursuant to Rule 7(d) because it constitutes "highly prejudicial surplusage."[13]

The Government argues that the Motion should be denied because the Third Superseding Indictment describes the object of the conspiracy charged in Count 1 as knowingly filing fraudulent lawsuits based on staged collisions to obtain money from insurance, trucking, and transportation companies, and describes the defendants' scheme to pay slammers for collisions that they knew were staged.[14]  The Government claims that the Third Superseding Indictment does not seek to punish Defendants for violating Louisiana law by paying runners, and further asserts that the Government will not argue to the jury that it should convict Defendants for that reason.[15]  The

---

[10] R. Doc. 583.

[11] *Id.* at p. 2; R. Doc. 583-1 at pp. 2–3.

[12] R. Doc. 583 at pp. 2–3; R. Doc. 583-1 at pp. 3–5 (citing *Cleveland v. United States*, 531 U.S. 12, 15, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000); *Kelly v. United States*, 590 U.S. 391, 394, 140 S.Ct. 1565, 206 L.Ed.2d 882 (2020); *United States v. Greenlaw*, 84 F.4th 325, 343–44 (5th Cir. 2023)).

[13] R. Doc. 583-1 at pp. 6–7.

[14] R. Doc. 634 at p. 20 (*citing* R. Doc. 517 at pp. 6–16).

[15] R. Doc. 634 at p. 20.

Government asserts that Paragraph 8 accurately states that Labeaud and Hickman were both slammers who brought staged and "legitimate" cases to Defendants for payment.[16]  The Government claims that Paragraph 8 provides necessary context for understanding the relationship between Defendants and Lebeaud and Hickman, and will be relevant and helpful to the jury's determination of Defendants' knowledge of Labeaud and Hickman's other illegal conduct.[17]

The Government further asserts that the fact that Defendants paid Labeaud and Hickman to be illegal runners is significant to the obstruction of justice and witness tampering allegations in Paragraphs 16 through 20 of Count 1, as well as Counts 8 and 9.[18]  The Government points out that those portions of the Third Superseding Indictment include allegations that Defendants manipulated Labeaud and Hickman into making false statements during conversations that Defendants secretly recorded and that Giles made false statements during the recordings regarding paying Labeaud and Hickman for referrals, which are relevant to whether Defendants acted with corrupt intent when they made the recordings, as charged in Counts 8 and 9.[19]  The Government argues that the cases cited by Defendants in their Motion are inapposite because the object of the conspiracy in this case was to deprive insurance, trucking, and transportation companies of money and not some other form of property.[20]  The Government also asserts that Defendants ignore the presumption

---

[16] R. Doc. 634 at p. 20 (*citing* R. Doc. 517 at pp. 6–7).
[17] R. Doc. 634 at p. 21.
[18] *Id*. at pp. 21–22 (*citing* R. Doc. 517 at pp. 10–11 & 21–22).
[19] R. Doc. 634 at p. 22.
[20] *Id*. (citing *United States v. Ryan*, 156 F.4th 583, 592–94 (5th Cir. 2025)).

that the jury will follow the Court's instructions,[21] and asserts that the Court can give a curative instruction if necessary.[22]

In response, Defendants assert that, contrary to the Government's assertion in its Opposition brief, the documents produced by the Government in discovery indicate that it will suggest to the jury that Defendants should be convicted for paying illegal runners.[23]   As such, Defendants maintain their request to strike Count 1(D), Paragraph 8 because it references "illegal runners."[24]

## II.   LEGAL STANDARD

### A. Motion to Dismiss Indictment

Federal Rule of Criminal Procedure 7(c) requires an indictment to contain "a plain, concise and definite written statement of the essential facts constituting the offense charged," and to state for each count, "the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to have violated."[25]   As explained by the Fifth Circuit, "[u]nder the Sixth Amendment, an indictment must '(1) enumerate each prima facie element of the charged offense; (2) inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions.'"[26]   According to the Fifth Circuit, "an indictment is sufficient if it 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must

---

[21] R. Doc. 634 at p. 22 (*citing United States v. Reed*, 908 F.3d 102, 115 n.42 (5th Cir. 2018)).

[22] R. Doc. 634 at pp. 22–23.

[23] R. Doc. 669 at pp. 1–2.

[24] *Id*. at p. 2.

[25] Fed. R. Crim. P. 7(c)(1).

[26] *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (quoting *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996)).

defend.'"[27]  "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges."[28]  "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged."[29]

Rule 12(b) of the Federal Rules of Criminal Procedure permits a defendant to raise by a pretrial motion, "[a]ny defense, objection, or request that the court can determine without a trial on the merits."[30]  In the instant Motion, Defendants seek dismissal of Count1(D), Paragraph 8 of the Third Superseding Indictment for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).[31]  According to the Fifth Circuit, "[t]he propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . .  If a question of law is involved, then consideration of the motion is generally proper."[32]  When considering a motion to dismiss the indictment for failure to state an offense, a court is required to "take the allegations of the indictment as true and to determine whether an offense

---

[27] *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *Unites States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)).

[28] *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978).

[29] *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (quoting *United States v Ramirez,* 233 F.3d 318, 323 (5th Cir. 2000), *overruled on other grounds by United States v Longoria*, 298 F.3d 367 (5th Cir. 2002)) (citation modified)); *See United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017) (same).

[30] Fed. R. Crim. P. 12(b)(1).

[31] R. Doc. 583-1 at p. 3.

[32] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005), *abrogated on other grounds as recognized by United States v. Garcia*, 707 Fed.Appx. 231 (5th Cir. 2017)).

has been stated."[33]   Additionally, "[a] court must deny a motion to dismiss if the motion relies on disputed facts."[34]

## B. Motion to Strike Surplusage

Federal Rule of Criminal Procedure 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."   "The mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken."[35]   Instead, "[s]urplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled."[36]   The Fifth Circuit has held that, "[f]or language to be struck from an indictment, it must be irrelevant, inflammatory, and prejudicial."[37]   According to the Fifth Circuit, "[t]he inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial."[38]   The Fifth Circuit has made clear, however that, "[w]here information in an indictment is sufficiently relevant to the charged offense,

---

[33] *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)) (citation modified).

[34] *USPlabs, LLC*, 338 F. Supp. 3d at 557 (citing *United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969) (holding that a court can resolve a pretrial motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense")).

[35] *United States v. Solomon*, 273 F.3d 1108 (5th Cir. 2001) (citing *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)).

[36] *United States v. Trice*, 823 F.2d 80, 89 n.8 (5th Cir. 1987).

[37] *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993) (citing *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

[38] *Bullock*, 451 F.2d at 888.

the court should not strike it, no matter how prejudicial it may be."[39]  Further, "[t]his standard is 'exacting' and strict, and as a result, the motion is rarely granted."[40]

## III.   ANALYSIS

### A. Motion to Dismiss Count 1(D), Paragraph 8

Defendants are charged in Count 1 of the Third Superseding Indictment with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349.[41]  Section 1349 provides that, "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."[42] According to the Fifth Circuit, the elements of conspiracy under § 1349 are: (1) two or more persons made an agreement to commit an unlawful act; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the agreement willfully, with the intent to further the unlawful purpose.[43]  "An agreement may be inferred from concert of action, voluntary participation may be inferred form a collection of circumstances, and knowledge may be inferred from surrounding circumstances."[44]  The Fifth Circuit has further held that the elements of mail fraud under 18 U.S.C. § 1341 are: (1) a scheme to defraud; (2) use of the mails

---

[39] *Solomon*, 273 F.3d 1108 (citing *Scarpa*, 913 F.2d at 1013).

[40] *United States v. Edwards*, 72 F. Supp. 2d 664, 667 (M.D. La. 1999) (citing *Bullock*, 451 F.2d at 888; *United States v. Johnson*, Crim. A. No. 98-276, 1999 WL 551332 (E.D. La. June 10, 1999) (Sear, J.); *United States v. Oakar*, 111 F.3d 146, 157 (D.C. Cir. 1997)).  *See also* 1 Charles A. Wright, Federal Practice and Procedure, § 127 at p. 639 (3d ed. 1999).

[41] R. Doc. 517 at p. 18.

[42] 18 U.S.C. § 1349.

[43] *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014) (citing *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2012)).

[44] *Simpson*, 741 F.3d at 547 (quoting *Grant*, 683 F.3d at 643) (citation modified).

to execute the scheme; and (3) the specific intent to defraud.[45]  Similarly, the elements of wire fraud under 18 U.S.C. § 1343 are: (1) a scheme to defraud; and (2) the use of, or causing the use of, wire communications in furtherance of the scheme."[46]

In Count 1 of the Third Superseding Indictment, the Government alleges the following conspiracy to commit mail and wire fraud:

> Beginning at a time unknown, but as early as approximately December 12, 2011, and continuing until on or about December 6, 2024, in the Eastern District of Louisiana and elsewhere, the defendants, **SEAN ALFORTISH, VANESSA MOTTA, MOTTA LAW, LLC, JASON F. GILES**, **THE KING FIRM, LLC, LEON M. PARKER, a/k/a "Chunky," DIAMINIKE F. STALBERT, CARL G. MORGAN, TIMARA N. LAWRENCE,** and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree:
>
>> a.  to devise a scheme and artifice to defraud and to obtain money and property from insurance companies and commercial vehicle companies by means of materially false and fraudulent pretenses, representations, and promises, and cause mail matter to be delivered by the United States Postal Service and by any private or commercial interstate carrier for the purpose of executing or attempting to execute the scheme to defraud, in violation of Tile 18, United States Code, Section 1341; and
>>
>> b.  devise a scheme and artifice to defraud and to obtain money and property from insurance companies and commercial vehicle companies by means of materially false and fraudulent pretenses, representations, and promises, and cause signals and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing or

---

[45] *Simpson*, 741 F.3d at 547 (quoting *Grant*, 683 F.3d at 643) (citation modified).
[46] *Simpson*, 741 F.3d at 547–48 (quoting *United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009)) (citation modified).

attempting to execute the scheme to defraud, in violation of
Title 18, United States Code, Section 1343.[47]

The Government then lists the members of the conspiracy, to include Defendants,[48]

and sets forth the manner and means of the conspiracy, alleging that there was a

conspiracy by all of the defendants to intentionally stage automobile collisions,

including with 18-wheeler tractor-trailers, for the purpose of filing fraudulent

insurance claims or lawsuits, that the defendants recruited other people to

participate in staged collisions, and that the defendants utilized the mail and

interstate wirings to file and pursue fraudulent insurance claims and lawsuits based

on staged collisions.[49]  The Third Superseding Indictment then describes a scheme

whereby Labeaud and Hickman staged accidents for Defendants who filed fraudulent

lawsuits based on the staged accidents,[50] and a scheme in which Cornelius Garrison

and Ryan Harris staged accidents for Defendants, Alfortish, Motta, and Motta Law

who then filed fraudulent lawsuits based on those staged accidents.[51]  As part of the

scheme involving the collisions that Labeaud and Hickman staged for Defendants,

the Government alleges in Count 1(D), Paragraph 8 that, "[i]n addition to staging

collisions, Labeaud and Hickman worked as illegal 'runners' for **GILES** and **THE**

**KING FIRM**.  As runners, Labeaud and Hickman referred individuals involved in

automobile collisions to **GILES** and **THE KING FIRM** for money."[52]

---

[47] R. Doc. 517 at pp. 3–4.
[48] *Id*. at pp. 4–6.
[49] *Id*. at p. 6.
[50] *Id*. at pp. 7–11.
[51] *Id*. at pp. 12–18.
[52] *Id*. at p. 7.

Taking the allegations of the Third Superseding Indictment as true, as the Court is required to do,[53] the Court finds that Count 1 sufficiently states an offense for conspiracy under 18 U.S.C. § 1349, and sufficiently states, as the objects of the conspiracy, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.  The Court specifically finds that Count 1 sets forth all of the elements of the offense of conspiracy to commit mail and wire fraud by alleging that the named defendants acted in concert to hire individuals to stage accidents so that they could file fraudulent insurance claims and fraudulent lawsuits based upon the staged accidents, and that they used the mails and wire communications to file the fraudulent claims and lawsuits.  Notably, Defendants fail to address the elements of a conspiracy to commit mail and wire fraud claim in their briefs.[54]  While Defendants challenge Paragraph 8 of Count 1(D) because it alleges that Defendants paid Hickman and Labeaud to illegally refer clients to them for both staged and "legitimate" accidents, Count 1 does not charge Defendants with a conspiracy to commit mail and wire fraud based upon their alleged use of illegal runners.  The Court agrees with the Government that the object of the conspiracy charged in Count 1 is to deprive insurance and commercial vehicle companies of money, and not some other form of property.  Defendants likewise fail to mention that Paragraph 8 is part of the 32 paragraphs in Count 1 that set forth the manner and means of the

---

[53] *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).
[54] *See* R. Docs. 583 & 669.

conspiracy, all of which detail how the scheme to defraud was carried out by each named defendant.

According to the Fifth Circuit, "[a]s long as the statutory language of the charged offense unambiguously sets out all the necessary elements, an indictment setting forth the offense in the words of the statute itself is generally sufficient."[55] The Court finds that Count 1 tracks the language of 18 U.S.C. §§ 1341, 1343, & 1349, and that all of the required elements are included in the statutory language. The Court further finds that Count 1 of the Third Superseding Indictment contains the essential elements of a conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349, where the objects of the conspiracy are mail fraud and wire fraud, and fairly informs Defendants of the charge against them so that Defendants can defend against the charge. Accordingly, to the extent Defendants seek to dismiss Count 1(D), Paragraph 8 of the Third Superseding Indictment pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v), the Motion is denied.

### B. Alternative Motion to Strike Surplus Language in Count 1(D), Paragraph 8

In the alternative, Defendants assert that if the Court does not dismiss Count 1(D), Paragraph 8, it should strike the entire paragraph as "highly prejudicial surplusage" that may confuse and mislead the jury.[56] The Court finds that this language could potentially be confusing to the jury since it alleges that Defendants violated the law by paying Hickman and Labeaud for referring clients, without

---

[55] *United States v. Hagemann*, 950 F.2d 175, 183 (5th Cir. 1991).
[56] R. Doc. 583-1 at pp. 6–7.

specifying that this activity is illegal under Louisiana law. Nonetheless, to be stricken, the alleged surplusage must be irrelevant, inflammatory, *and* prejudicial.[57] While the contested language may be potentially confusing, the Court does not find that the language is irrelevant, inflammatory, and prejudicial. Instead, the Court finds that it may be relevant as helpful context for the crimes charged in Counts 1, 8, and 9 of the Third Superseding Indictment. As the Government points out, this information may be relevant to the jury's determination regarding Defendants' knowledge of Hickman and Labeaud's other illegal conduct for purposes of Count 1. It may also be relevant to the obstruction of justice and witness tampering charges in Counts 8 and 9, and the allegations that Defendants manipulated Labeaud and Hickman into making false statements during conversations that Defendants secretly recorded. The Government alleges that during these recorded conversations, Giles made several false representations, including the suggestion that he never paid Labeaud or Hickman for referrals. As the Fifth Circuit has pointed out in similar cases, "intent 'will almost always have to be established by circumstantial evidence.'"[58] Further, and importantly, the jury will be given instructions that will make clear to them what Defendants are actually charged with and the elements of each charge that must be proven by the Government. This cures any potential prejudice from any alleged surplusage. As such, the Court finds that Defendants have failed to satisfy the "exacting" and strict standard required to strike information

---

[57] *United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993) (citing *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

[58] *United States v. Jena*, 478 Fed.Appx. 99, 101–02 (5th Cir. 2012) (quoting *United States v. Sandlin*, 589 F.3d 749, 755 (5th Cir. 2009)).

from the Third Superseding Indictment, and denies their request to strike Count 1(D), Paragraph 8.

## IV.    CONCLUSION

For the reasons set forth above, Defendants Jason Giles and The King Firm's Motion to Dismiss Count 1(D), Paragraph 8 (To the Extent It Alleges a Conspiracy to Utilize "Runners") or, In the Alternative, to Strike Count 1(D), Paragraph 8 as Surplus and Prejudicial Language as to the Third Superseding Indictment[59] is **DENIED**.

New Orleans, Louisiana, February 27, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[59] R. Doc. 583.