OFFICIAL RECORD
Document participants have digitally signed. All signatures have been verified by a certified FBI information system.

**UNCLASSIFIED//FOUO**

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 03/11/2021

Interview of DAMIAN LABEAUD (LABEAUD), cooperating defendant, on 11/19/2020.

Present: LABEAUD, defense attorney Steve Lemoine, AUSA Shirin Hakimzadeh, AUSA Maria Carboni, AUSA Brian Klebba, AUSA Ed Riveria, FBI Senior Financial Investigator Paul DuPlessis and FBI Senior Financial Investigator Donna Gorum.

LABEAUD provided the following information:

Regarding the November 16, 2017, recorded conversation provided to the USAO by defense attorney David Courcelle. He had reviewed a transcript of the call prior to this meeting.

LABEAUD received a telephone call from JASON GILES (GILES) and GILES asked if LABEAUD would be in the office (King Law Firm office on Canal Boulevard in New Orleans) that day and asked him to stop by his (GILES) office. When LABEAUD got to the office he saw GILES and they went to ANTHONY MILLAZZO's (MILLAZZO) office (I thought he said GILES office, but your hearing is better than mine). GILES stated that things were getting "hot" and "this shit is getting out of hand", referring to the investigations into staged motor vehicle accidents in the New Orleans area. LABEAUD stated that in MILLAZZO's office, GILES told LEBEAUD that they needed to convince partner BRIAN KING (KING) that they were not involved in fraud. GILES, MILLAZZO and LABEAUD went over all kinds of questions to convince KING that the referrals LABEAUD brought to the firm were legitimate. GILES left MILLAZZO's office and went to his own office. LABEAUD and MILLAZZO talked a little longer then joined GILES in GILES' office. GILES called KING into his office and the conversation LABEAUD, GILES and MILLAZZO had rehearsed in GILES office designed to convince KING began. During the conversation KING walked in and out of GILES office. A couple of times during the conversation LABEAUD felt suspicious because GILES was cutting him off when he was trying to expound on certain things. He was also surprised that GILES brought up LABEAUD's family members in the conversation. LABEAUD remembers being concerned about the "man to man" statement on the recording but the rest of the things GILES said around that statement were on the level, so he brushed it off.

LABEAUD was not aware of GILES routinely recording conversations with anyone, including staged accident participants, [redacted]. [redacted]. This was around May 2017.

LABEAUD stated that generally he and GILES did not discuss their fraudulent activities in front of KING. They would close doors when they spoke and talk in code but LABEAUD was very confident that KING knew what was

**UNCLASSIFIED//FOUO**

Investigation on 11/19/2020 at New Orleans, Louisiana, United States (In Person)

File # [redacted] Date drafted 11/20/2020

by GORUM DONNA SUZANNE, Paul J. DuPlessis

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; to be distributed outside your agency.

GOVERNMENT EXHIBIT 23

going on. LABEAUD was always in the office and routinely did the opening paperwork for the clients he brought to the firm. On several occasions KING would finish up the paperwork or issue checks if GILES or MILLAZZO were not in the office.

LABEAUD stated that he followed GILES from the [redacted] and all his activity was with GILES and MILLAZZO at the KING LAW FIRM. LABEAUD recalled the "fish" dinner conversations and text messages he would have with GILES. This was the code they created to describe a staged accident and how many passengers LABEAUD was bringing to GILES. At least once GILES was in Dallas, Texas, when LABEAUD called him. LABEAUD stated GILES definitely knew the accidents were staged.

LABEAUD remembers several times when he, GILES, MILLAZZO and KING had brainstorming meetings. One meeting concerned the fact that several clients were leaving the KING FIRM and going to PATRICK KEATING's firm. They had these kinds of meetings any time they got nervous.

[redacted].

LABEAUD said on a few occasions when he (LABEAUD) and GILES were having a discussion in GILES' office KING would shout out an answer from his office.

After the November 2017 conversation about the fraud, LABEAUD said things slowed down but they did not stop.

When LABEAUD was arrested in 2019 he was no longer working with GILES. At that point he had stopped staging accidents. LABEAUD remembers around the time he was arrested a settlement of $4.2 million fraud had hit the news. He does not remember any more specifics of that accident.

LABEAUD had saved his old cell phones and considered them "weapons of mass destruction" because of the text messages between he and GILES. He turned them over to the FBI when he agreed to cooperate.

The audio recording was reviewed. The "Chris" discussed in the recording was LABEAUD's cousin [redacted] LABEAUD had staged the accident that he and [redacted] were involved in. [redacted] had been fired from the New Orleans Police Department for use of excessive force. At the time of the recorded conversation the staged accident involving [redacted] and LABEAUD had not been settled.

During the meeting on November 16, 2017, GILES informed LABEAUD a defense attorney wanted his (LABEAUD) contact information so they could depose him. LABEAUD told GILES not to give them his information. LABEAUD said that he was never deposed for that investigation or any other.

GILES handled three staged vehicle accidents for LABEAUD. The first one was while GILES worked with [redacted] and the other two were after GILES left [redacted] He received the settlement of $59,032.32 on November 30, 2017, via First Bank & Trust check number 2085 from account number XXXXX9795. The notation on this check was "settlement out to client-DAMIAN LABEAUD 15-0302B. LABEAUD remembers getting a settlement statement with the check but does not recall if the advances he received were notated on the settlement sheet. He will try to find the document. LABEAUD further stated this was the settlement check for the staged accident he and his cousin [redacted] were involved in.

LABEAUD last spoke to GILES a couple of days after he was arrested. LABEAUD called out of "respect" for GILES

UNCLASSIFIED//FOUO

[redacted]

Continuation of FD-302 of (U//FOUO) Interview of Damian LaBeaud 11/19/2020, On 11/19/2020, Page 3 of 3

and told GILES he needed an attorney. GILES said he would talk to some of his friends but never got back with LABEAUD. LABEAUD changed his cell phone number since then. At that time GILES told LABEAUD that he (GILES) had retained an attorney and the attorney did not think it was a good idea for he and LABEAUD to meet in person.

LABEAUD was reminded that that if anyone tried to contact him, he should inform his attorney immediately.

On occasion, when circumstances prevented GILES from meeting with LABEAUD in private, GILES hid money in a magazine at his office and told GILES to read an article in a specific magazine. GILES also passed money to LABEAUD using [redacted]). When [redacted] was arrested for DWI and vehicular homicide GILES told LABEAUD he was very concerned because [redacted] knew about the accident staging and was concerned he would tell authorities to get a deal on his situation.

[redacted]

[redacted]

Drafted 11/20/2020

UNCLASSIFIED//FOUO