FD-302 (Rev. 5-8-10)

OFFICIAL RECORD
Document participants have digitally signed. All signatures have been verified by a certified FBI information system.

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 03/12/2021

RODERICK HICKMAN, was interviewed at the United State Attorney Office - Eastern District of Louisiana, 650 Poydras Street Suite 1600, New Orleans, LA 70130. Also present for the interview was AUSA SHIRIN HAKIMZADEH, US Attorney, FBI Senior Financial Investigators Paul Duplessis and Donna Gorum, and CLARENCE ROBY, HICKMAN's defense attorney. After being advised of the identity of the interviewing Agents and the nature of the interview, HICKMAN provided the following information:

HICKMAN did not remember anything about an auto accident that happened on June 28, 2017.

[At this point in the interview, Special Agent Brandon Brown showed HICKMAN pictures of the individuals involved in the June 28, 2017 auto accident.]

HICKMAN did not recognize anyone in the photographs.

[At this point in the interview, Special Agent Brandon Brown showed HICKMAN pictures of the vehicle involved in the June 28, 2017 auto accident.]

HICKMAN did not recognize the vehicle. HICKAMAN was familiar with the spot of the accident at the intersection of Tchoupitoulas Street and Calliope Street. HICKMAN was predominately staging accidents in 2015 and 2016. HICKMAN believed most of the accidents in 2017 were staged by DAMIEN LABEAUD. HICKMAN admitted he staged some accidents in 2017. HICKMAN and LABEAUD stopped staging together accidents sometime in 2017.

[At this point in the interview, Special Agent Brandon Brown read a phone number to HICKMAN.]

HICKMAN confirmed the phone number read to him was his phone number and was the only phone number he had ever had.

[At this point in the interview, Special Agent Brandon Brown showed phone

Investigation on 03/04/2021 at New Orleans, Louisiana, United States (In Person)

File # [redacted] Date drafted 03/05/2021

by JERNIGAN JORDAN, BROWN BRANDON PIERRE, GORUM DONNA SUZANNE, Paul J. DuPlessis

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its conte[nts are not] to be distributed outside your agency.

GOVERNMENT EXHIBIT
27

records to HICKMAN where he was in contact with the alleged driver of the car during the accident on June 28, 2017.]

HICKMAN confessed he must have been driving the car given the number of phone calls on June 28, 2017 to one of the occupants of the vehicle during the accident. HICKMAN called the people in the accident after the accident to see if everything was going to plan. HICKMAN and LABEAUD would bring clients to the King Firm.

[At this point in the interview, Special Agent Brandon Brown showed HICKMAN video surveillance of the time period right before the accident on June 28, 2017 at Tchoupitoulas Street and Calliope Street.]

HICKMAN did not recognize any of the cars in the video surveillance and said the spotter car could have been a rental car. LABEAUD would sometimes "rent" cars from other people by trading drugs for their cars.

[At this point in the interview, Special Agent Brandon Brown again showed phone records to HICKMAN where he was in contact with the alleged driver of the car during the accident on June 28, 2017.]

HICKMAN was following up with the participants in the accident when he made the phone calls on June 28, 2017. Before the accidents HICKMAN staged, he would meet with the participants and exchange telephone numbers. The participants in the staged auto accidents knew what was going to happen before hand. Once the accident occurred, the follow car picked up the driver of the wrecked car and went on their way. After a police report was filed, the participants in the accident were taken to a law firm. HICKMAN stated the participants in the accidents make up their own stories as to what they were doing, during the time of the accident. The participants in the accidents were told to tell the police they were side-swiped by the truck or the truck took a wide turn and came into their lane.

[At this point in the interview, Special Agent Brandon Brown asked HICKMAN why he was in contact with the driver of the car two days after the accident.]

HICKMAN stated the driver was probably having issues with the law firm and that is why he was contacting HICKMAN.

LABEAUD was involved in the June 28, 2017 accident and HICKMAN was the driver of the car during the staged accident. HICKMAN received $4,000 for the staged accident from The King Firm. It changed from accident to accident on who received the money between LABEAUD and HICKMAN.

[At this point in the interview, Special Agent Brandon Brown showed HICKMAN a check from Giles Law Firm, LLC made payable to RODERICK HICKMAN written for $800 and dated 06/28/2017.]

HICKMAN did not know what the check was written for. Sometimes HICKMAN was paid in cash but a majority of the time he was paid with checks for the staged accidents. When HICKMAN was paid in cash, he would pick up the envelope from the front desk at the King Firm. HICKMAN received a check from JASON GILES in the amount of $500 as a wedding gift. HICKMAN was never told by GILES what to say if anyone asked HICKMAN what the checks were for.

HICKMAN never worked in a legitimate capacity for GILES. GILES did loan HICKMAN money at times. HICKMAN did not setup staged accidents for ANTHONY MILAZZO and only talked to MILAZZO in passing.

[At this point in the interview, Special Agent Brandon Brown played an audio clip of a discussion between HICKMAN and GILES.]

[redacted]

HICKMAN believed all of the attorneys at the King Firm were friends and never saw anyone mad at each other. HICKMAN did not have much interaction with BRIAN KING, but they were on a first name basis with each other.

HICKMAN always went to GILES' office when he went to the King Firm. HICKMAN did not personally know CORNELIUS GARRISON and never saw him at the King Firm.

[At this point in the interview, Special Agent Brandon Brown asked HICKMAN about his own auto accident on September 1, 2017 in which HICKMAN was included on the police report.]

[redacted] HICKMAN

stated the accident on September 1, 2017 was not staged. HICKMAN received a $1,000 check from GILES dated September 1, 2017. The check was for HICKMAN's accident. HICKMAN had no recollection of suing [redacted]

HICKMAN met up with GILES the day after the accident, because he went to the Saints Game after the accident. HICKMAN did not remember meeting up with GILES after hours.

HICKMAN dealt mostly with GILES and/or [redacted] after his accident. HICKMAN received a settlement for his accident in the amount of $73,599.22.

The total settlement for HICKMAN's accident was $235,000.

[At this point in the interview, the interview participants took a break for HICKMAN to collect his thoughts.]

HICKMAN admitted his accident was staged and lied because he did not have a driver's license at the time of the accident. HICKMAN stated he did not tell GILES it was a staged accident. GILES paid HICKMAN $1,000 for becoming a client. HICKMAN stated he was legitimately hurt as a result of his accident.

[At this point in the interview, Special Agent Brandon Brown showed HICKMAN pictures of the vehicle from the accident on September 1, 2017.]

[redacted]

GILES told HICKMAN to stage accidents at the intersection of Tchoupitoulas Street and Calliope Street. GILES had noticed the intersection, because it was close to the [redacted]. GILES told HICKMAN 18 wheelers swing wide at that intersection when they are making turns. HICKMAN said this conversation took place sometime in 2016, and

HICKMAN staged an accident there about a week after the conversation.

HICKMAN stated GILES' mother erroneously gave someone $3,000 for staging an accident believing the person to be HICKMAN.