FD-302 (Rev. 5-8-10)

OFFICIAL RECORD
Document participants have digitally signed. All signatures have been verified by a certified FBI information system.

# FEDERAL BUREAU OF INVESTIGATION

Date of entry 02/01/2022

PATRICK KEATING, date of birth (DOB) [redacted], cellular telephone [redacted] was interviewed via conference telephone call. Also participating in the interview was Assistant US Attorney, Maria Carboni. After being advised of the identity of the interviewing Agent and the nature of the interview, KEATING provided the following information:

KEATING represented JOSEPH BREWTON in two separate accidents, one occurred in August 2015 and the second occurred September 2015. BREWTON, [redacted] were occupants in the passenger vehicle in the August 2015 accident. Initially, the KING FIRM represented BREWTON; subsequently BREWTON elected to move his suit to KEATING. The August 2015 accident went to mediation; however, the defendant insurance company went into receivership. KEATING withdrew from the August 2015 civil suit. The civil suit was not picked up by any other plaintiff attorneys. The civil suit was not settled.

The September 2015 accident was settled. National Union paid a settlement to KEATING and BREWTON of approximately $301,000.00. KEATING was happy with the settlement; KEATING recovered his costs in the suit. BREWTON was not happy with the settlement. BREWTON may have underwent neck and back surgery as treatment for this accident.

When KEATING reviewed telephone records he noticed BREWTON and DAMIAN LABEAUD had multiple communications. It was possible BREWTON recruited individuals to participate in staged accidents set up by LABEAUD. BREWTON may have called LABEAUD when BREWTON had problems with his civil suits. LABEAUD was known to help settle those type of problems.

BREWTON came to KEATING's office often; KEATING was not real fond of BREWTON. KEATING wanted BREWTON out as quickly as possible. BREWTON had a difficult time comprehending when KEATING tried to explain issues in the civil suit(s). BREWTON had trouble understanding concepts.

BREWTON had a hard time understanding when he had multiple accidents close together in time, it could affect his suit's outcome. KEATING assumed

Investigation on 01/27/2022 at New Orleans, Louisiana, United States (Phone)

File # [redacted] Date drafted 01/28/2022

by Robert G. Orvin II

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agen to be distributed outside your agency.

GOVERNMENT EXHIBIT
32

BREWTON and LABEAUD worked together to stage fraudulent accidents. BREWTON and LABEAUD were on the telephone with each other too much. At least one of the two accidents BREWTON was involved in was staged. The accident in New Orleans, LA was definitely staged.

STACIE WHEATEN and FLORENCE RANDLE could provide information about the KING FIRM. RANDLE was in an accident in April 2016. CORY SIMS and DERWIN WHEATEN were also in the vehicle with RANDLE. It was claimed the commercial truck turned wide and hit RANDLE, SIMS, and DERWIN WHEATEN. This accident was originally handled by the KING FIRM. It was highly likely LABEAUD set up this accident.

RANDLE's April 2016 accident occurred before KEATING was introduced to the fraudulent accident scheme. KEATING was tipped off the accident was possibly fraudulent, so KEATING asked RANDLE. While RANDLE was at KEATING's office, RANDLE told KEATING her accident was staged. It was said with the presumption KEATING knew. KEATING told RANDLE he did not know and if she mentioned it again KEATING would not represent her.

STACIE WHEATEN asked KEATING if he wanted to meet LABEAUD, who set up accidents. STACIE WHEATEN told KEATING, LABEAUD staged accidents for the KING FIRM. LABEAUD claimed he helped make the KING FIRM. LABEAUD helped make the [redacted], before JASON GILES, BRIAN KING, and ANTHONY MILAZZO left [redacted] open the KING FIRM. KEATING had a small office, so he could not take the volume of accidents LABEAUD was bringing him.

KEATING was out of the country the day LARRY WILLIAMS' accident was staged. On the day of the accident, LABEAUD called KEATING to bring him the accident. On the same day, LABEAUD eventually called MILAZZO to take the accident to the KING FIRM.

KEATING did pay one check to STACIE WHEATEN for bringing a staged accident. Most other payments to STACIE WHEATEN were for advances. These clients would leave a plaintiff attorney, if not paid advances. It was easier to pay the advances to keep the clients. As KEATING took other commercial vehicle accidents, KEATING noticed many related individuals were getting into similar accidents. KEATING realized the group of related plaintiffs living on Bayou Black Road, in Gibson, LA, were going to get indicted. The similar location of the multiple accidents in New Orleans, LA and the telephone connectivity were strong indicators of potential fraud. Also, many of the accident participants attended the same Church in Gibson, LA.

TANYA GIVENS could provide information on STACIE WHEATEN. The two of

them were together often. GIVENS was present at the fast-food restaurant the day KEATING signed up LUCINDA THOMAS, after her accident.

KEATING maintained an invoice for costs related to each civil suit. KEATING prepared a settlement sheet when the civil suit was settled. The settlement sheet should balance to the invoice. In STACIE WHEATEN's civil suit(s) this would not be the case. STACIE WHEATEN was paid more because of the staged accidents.

KEATING and the other plaintiff attorneys played the game. The knowledge of the accidents being set up was ignored. KEATING and the other plaintiff attorneys had the participants sign an affidavit of fact.

[redacted] VANESSA MOTTA's boyfriend [SEAN ALFORTISH] probably had a role in the fraud. [redacted]