FD-302 (Rev. 5-8-10)



OFFICIAL RECORD
Document participants have digitally signed. All signatures have been verified by a certified FBI information system.

# FEDERAL BUREAU OF INVESTIGATION

Date of entry 08/23/2022

PATRICK KEATING, date of birth (DOB) [redacted], was interviewed at the United States Attorney's Office (USAO), Eastern District of Louisiana. Also present during the interview was KEATING's criminal defense counsel, Brian Capitelli. Also participating in the interview were Assistant US Attorneys Maria Carboni and Brandon Long. Forensic Accountant, Jodi Beninati also participated in the interview. After being advised of the identity of the interviewing Agents and the nature of the interview, KEATING provided the following information:

KEATING met FLORENCE RANDLE, STACIE WHEATEN, DAMIAN LABEAUD, MARIO SOLOMON, TANYA GIVENS, and participants in one of the staged accidents at a Buffalo Wild Wings on the Westbank of New Orleans. It was likely the staged accident involving TROY SMITH, which occurred in May 2017. KEATING sat with LABEAUD, STACIE WHEATEN, SOLOMON, and GIVENS at one table. RANDLE, SMITH, and the other participants sat at an adjacent table. It was possible this meeting may have occurred in April 2017.

At one point, RANDLE was at KEATING's Law Office to request an advance. RANDLE told KEATING she had a recording, she made on her cellular telephone of the meeting. RANDLE threatened she would release the recording, of the discussion of illegal activity, to law enforcement, if KEATING did not give her money.

Subsequently, KEATING talked with STACIE WHEATEN regarding the recorded meeting. STACIE WHEATEN said she would take care of it. This conversation may have occurred in or around late 2018.

[redacted]

The staged accident participants RANDLE brought to KEATING were either family members or persons RANDLE knew from her local church. KEATING represented RANDLE in approximately three accidents, one of which was a

GOVERNMENT EXHIBIT 40

Investigation on 08/17/2022 at New Orleans, Louisiana, United States (In Person)

File # [redacted] Date drafted 08/17/2022

by Robert G. Orvin II, BROWN BRANDON PIERRE

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

staged accident. This was the accident which occurred in April 2016. CORY SIMS, DERWIN WHEATEN, and RANDLE were the participants. The other accident occurred after the April 2016 accident in Houma, LA. STACIE WHEATEN and RANDLE were involved in this accident. The third accident occurred on 05/12/2018, which involved RANDLE and DERWIN WHEATEN. KEATING was not aware if these two other accidents were fraudulent.

[redacted]

KEATING utilized QuickBooks for his accounting. KEATING coded client advances to track costs associated with the civil suits. Checks written on the date of the suspicious accident, for a specific amount, such as $1,000, $1,500, or $3,000 were for a staged accident. KEATING used one line of credit from MidSouth Bank (now Hancock Whitney Bank) for client costs, to include client advances. These costs were passed onto the client.

The $18,000 check to RANDLE was for her home repairs. KEATING may have charged this advance to the DARNELL WHEATEN (deceased) case. RANDLE received, on a fairly regular basis, advances of $800.00 from KEATING. These advances were for living expenses.

Clients KEATING signed up in Houma, LA related to staged accidents were brought by RANDLE and/or STACIE WHEATEN. KEATING typically paid RANDLE and/or STACIE WHEATEN for these accidents. Initially, KEATING was not sure which of the two, RANDLE or STACIE WHEATEN, was the organizer of the staged accident. Clients signed up in New Orleans East were organized by LABEAUD. KEATING paid LABEAUD for these accidents.

Having an open case with RANDLE and STACIE WHEATEN offered cover for payments for staged accidents. These payments were coded as client advances. KEATING accounted for these advances in one of three ways. One option was not to code the advance as a payment against the open case. The second option was to code the payment as an advance, but not deduct the payment from the settlement. The third option was to pay in cash. Typically, KEATING withdrew the funds from an ATM, the day of or multiple days prior to the staged accident.

It came to KEATING's knowledge participants in the staged accidents paid LABEAUD to participate in the staged accident.

[redacted]

[redacted]

[redacted] It was no secret the KING FIRM participated in the fraudulent accident scheme. No plaintiff firm got as big as the KING FIRM did so quickly without cheating.